MABEL ABEL v. HARDWOOD MANUFACTURING COMPANY.[1]

February 26, 1909.

Nos. 15,956—(186).

**Fencing Dangerous Machinery.**

The bag-turning machine, which forms the subject of this action, is within the statute which requires dangerous machinery to be guarded.

**Contributory Negligence.**

Respondent was an operator on such a machine, and had been carefully instructed not to clean any part of it while in operation. She was injured while attempting to pick up a cleaning cloth from the floor for the purpose of replacing it on the frame. *Held,* respondent was not necessarily guilty of contributory negligence.

Action in the district court for Hennepin county to recover $5,000 damages for personal injuries sustained while working in defendant's shop. The allegations of the complaint were denied by the answer. The evidence indicated that the cylinder referred to in the opinion was five inches in diameter, that about two inches of it was below the frame of the table, while the wall of the cylinder was an inch in thickness, and that it was five inches from the outside of the table to the cylinder. The case was tried before Holt, J., who denied a motion to direct a verdict for plaintiff and a similar motion in behalf of defendant. The jury returned a verdict in favor of plaintiff for $2,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Brown, Albert & Guesmer,* for appellant.
*Larrabee & Davies,* for respondent.

[1] Reported in 120 N. W. 359, 121 N. W. 916.

LEWIS, J.

Respondent was injured by having her hand caught in the plunger under the framework of a bag-turning machine in appellant's factory. The machine consisted of an iron framework about as high as an ordinary table, which contained an apparatus designed to turn flour sacks from the wrong to the right side. In the performance of her duties she was required to stand at one end of the table, and feed the open end of the bags upon certain arms or flies. The frame of the machine was open, and underneath, at the top, was located certain machinery, among which was what is known as a "plunger," consisting of an iron rod which played back and forth in the end of a cylinder. This plunger was fastened about five inches back from the front side, and projected an inch or two below the upper portion of the frame. According to the rules and custom of the factory, the machinery was stopped fifteen minutes before the closing hour of the day for the express purpose of permitting the operators to wipe the different parts of the machines and clean the tables and floors. The operators used one of the sacks for a cleaning cloth, and, when it was not in use, it was the common practice to hang it on the lower part of the framework at the foot of the machines. Just before the accident, respondent was walking back and forth in the aisle, in front of the machine, resting herself, and waiting for a fresh supply of bags, when she noticed that the cleaning cloth had fallen to the floor. She stooped, picked it up with her right hand, and was in the act of transferring it to her left hand for the purpose of replacing it, when she slipped, and in an effort to save herself from falling involuntarily threw up her left arm, and the hand came in contact with the plunger.

1. It has been held by this court in many cases that the statute requiring dangerous machinery to be guarded is remedial, and should be liberally construed, and, where reasonable men might differ about the practicability to guard, it becomes a question of fact for the jury. The evidence in this case is sufficient to sustain a finding that the machinery located under the table within the framework, although somewhat out of the way, was nevertheless dangerous, and that it was practicable to place a screen or guard in front of it. It is the purpose of the statute to guard against accidents, although the precise manner in which they occur may not have been anticipated. Christianson v.

Northwestern Compo-Board Co., 83 Minn. 25, 85 N. W. 826, 85 Am. St. 440.

2. At the argument, as well as in the brief, appellant laid great stress upon the fact that it was the universal custom that operators should never, under any circumstances, attempt to clean the machinery while it was in motion, and that respondent had been thoroughly instructed upon this point. The evidence is ample on that question. Respondent had been thoroughly instructed, and she understood that she was not under any circumstances to attempt to clean the machine while it was in operation. But she was not attempting to clean the machine when injured, according to her story. She was walking in the aisle, or alley, in front of the machine, for the purpose of recreation while she was waiting for another supply of sacks, and the accident occurred while she was endeavoring to pick up the cleaning bag from the floor, and putting it in its customary place on the lower part of the framework. Admitting, therefore, that she understood and appreciated the risk of attempting to use the cleaning bag in and about the machine while it was in operation, it does not conclusively follow that in trying to pick it up from the floor for the purpose of replacing it she was violating the rules or her instructions. Perhaps a more cautious person might not have attempted to do it in the same manner, but there is nothing incredible in her statement. She was in a stooping posture, the plunger was within her reach under the table, the jury examined the premises and the machine, and heard her testimony, and under proper instructions passed upon the question whether or not she was guilty of contributory negligence.

We discover no errors in the rulings of the court with respect to the evidence, instructions, and requests.

Affirmed.


BROWN, J. (dissenting).

I am unable to concur in the conclusion that defendant's failure to guard the "plunger" from which plaintiff received her injury further than it was guarded and protected was actionable negligence. The instrumentality was located immediately underneath the table at which plaintiff was at work, but not in a position to endanger her safety or the safety of others there engaged or those moving about the work-

shop. The table was constructed on a pattern with ordinary tables, with a level surface and side running boards. The "plunger" was immediately under the top surface of the table and between the side boards, and sufficiently protected from contact by employees.

ELLIOTT, J.

I concur in the dissent.

On July 6, 1909, the following opinion was filed:

PER CURIAM.

This action having been fully reconsidered on reargument, it is ordered that the original decision herein be adhered to.