Steve Cinkovitch, Appellee, v. Thistle Coal Company, Appellant.

Mines and mining: INJURY TO MINER: NEGLIGENCE. The question whether the pit boss of a mine had promised plaintiff to support the roof, prior to his injury by falling rock fragments, or whether it was the duty of the miner or operator to do such work is held under the evidence to be for the jury.

Same: CONTRIBUTORY NEGLIGENCE. Plaintiff in this case had worked for several days under a mine roof from which rock fragments were liable to fall, but without accident, and upon complaint the pit boss promised to take the loose rock down the next day. *Held,*

plaintiff was not as a matter of law negligent in completing his day's work without other support to the roof than such as then existed.

**Credibility of witnesses:** WEIGHT OF EVIDENCE. The credibility of witnesses and weight to be given their testimony are questions for the jury to determine.

**Master and servant:** ASSUMPTION OF RISK: BURDEN OF PROOF. The burden upon an issue of assumption of risk is on an employer to prove, by a preponderance of the evidence, that a servant suing for injuries continued to work in a place of danger, knowing his peril in so doing.

**Special interrogatories.** The court should not submit a large number of interrogatories amounting to a cross-examination of the jury on its verdict.

**Exclusion of evidence:** PREJUDICE. The exclusion of evidence which is afterward admitted is not prejudicial error.

**Argument of counsel:** MISCONDUCT. While many of the inflammatory remarks of counsel to the jury in the instant case are to be condemned, still as there was no objection to the same, except in a single instance, when the objectionable remark was withdrawn, a reversal is not ordered.

*Appeal from Appanoose District Court.*—HON. C. W. VERMILLION, Judge.

WEDNESDAY, JUNE 30, 1909.

REHEARING DENIED FRIDAY, SEPTEMBER 24, 1909.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals. —*Affirmed.*

*Howell & Elgin,* for appellant.

*J. M. Wilson* and *C. S. Wyckoff,* for appellee.

WEAVER, J.—The plaintiff was employed by the de-

fendant to labor as a coal miner.   At the time of his injury he was engaged in driving or excavating an air course running parallel with the main passage or roadway extending from the bottom of the shaft through the stratum of coal.   The air course was a passage about eight feet in width.   Plaintiff had been working there alone for some time, and was driving the excavation at the rate of three to four feet per day taking out the coal, leaving the course roofed by the overlying stratum of rock.   According to his story, after he had reached a point sixty to seventy-five feet from the entrance, he discovered in the roof what is known in miner's parlance as a "black bat."   This we understand is a piece of bituminous shale embedded in the rock immediately over the coal measure, and is liable, sometimes at least, to fall of its own weight when the coal beneath it has been removed.   After driving the course some distance under the bat, and uncovering some sixteen feet of its length, plaintiff notified the pit boss of the situation, and asked him to prop the bat or take it down.   The boss examined the roof, and, as claimed by the plaintiff, replied that the roof was all right, and added:  "Prop it up, and I'll take it down in the morning."   There seems to have been but one prop at hand, and this plaintiff set up under the bat.   He then went to other miners nearby, and found that they had no props but was told that they had sent an order or request to the person in charge of such supplies to have some sent into the mine.   Returning to his place of work, plaintiff began loading coal upon the push car by which it was to be moved toward the shaft, and within an hour or two the bat fell, injuring him severely.   It is the claim of the defendant that plaintiff was an experienced miner, fully acquainted with the danger from an overhanging bat, and was himself clearly negligent in caring for his own safety.   It denies the alleged promise of the pit boss to take down the bat, and claims it was plaintiff's duty as a miner to take it down

for his own protection, and that he had been warned of the necessity of removing it, but had negligently postponed giving it the proper attention.

I. There was evidence from which the jury could properly find that the support of the roof of an entry or an air course is not a part of a miner's duty unless it be

**1. MINES AND MINING: injury to miner: negligence.** at the face of the coal where he is continually removing the natural support, where he must put up props as he proceeds if the nature of the roof be such that rock fragments are liable to fall. As the work progresses, he is not charged with the duty of supporting the roof of the completed course behind him, and if in such completed course he discovers danger of a rock fall, and reports it to the operator or pit boss, the latter becomes charged with the duty of remedying the defect, though, according to some of the witnesses, the miner may, if he elects to do so, take down a bat, and is entitled to pay therefor as so much coal. The duty of each party and the manner in which it is performed are the subject of sufficient diversity in the testimony to take all these questions to the jury. The record is altogether too voluminous for us to attempt to set it out, and a partial statement would serve no useful purpose. We have read it with care, and are satisfied that, upon the question whether defendant was negligent with respect to the removal of the bat, there is sufficient to support a finding in the plaintiff's favor.

On the further question of plaintiff's alleged contributory negligence and assumption of risk, the case presented is somewhat closer, but we think the facts and circum-

**2. SAME: contributory negligence.** stances testified to by the plaintiff and in his behalf were such as the court could not properly hold him guilty of contributory negligence as a matter of law. He had worked under the bat for some days without a fall, and, if on the assurance of the boss that it was all right and would be taken down

in the morning he decided to complete his day's work, we are not prepared to say conclusively that he was negligent. True, there is considerable evidence tending to show that, to securely support the bat, he should have used several more props than he did; but in questions of that kind there is so much room for honest variance in the opinions and judgments of men of equal skill and experience that a jury is better qualified than the court to determine whether the party has acted with reasonable prudence and caution. The contention of the appellant that the trial court erred in refusing to direct a verdict in its favor cannot be sustained. In further support of this conclusion, it may be said that at the close of the evidence the court at defendant's request submitted a large number of special interrogatories to the jury, and the answers taken as a whole strongly sustain the theory of the plaintiff, both as to the alleged negligence of the defendant and the absence of contributory negligence on the part of the plaintiff.

II.   In support of its claim for a reversal of the judgment below, our attention is directed to sixty-seven assignments of error, each of which is argued with much earnestness, and supported by a large number of citations and references to the books. Within the permissible limits of an opinion, it is not possible to consider and discuss them separately, but there are some questions raised to which we will briefly advert, and, as to such others as may not be specifically mentioned, we will say that, after full consideration, we find nothing in them involving prejudicial error.

It is said that the court should have entered judgment for the defendant on the answers given to the special interrogatories. We can not so hold. Among other things, it is there found that the duty of looking after the roof was upon the company; that, considering the material at hand, plaintiff used reasonable care in propping the roof; that plaintiff, while knowing that the bat was heavy, was not acquainted with its general characteristics; that he did not

know it was liable to fall upon him; that he used reasonable care for his own safety; that, as a reasonably prudent man, he had a right to rely upon the statement of the pit boss that the roof was safe; and that defendant was negligent as charged. Other findings upon which appellants particularly rely in this respect are all reconcilable with those we have referred to, and none of them are sufficient to justify the court in disturbing the general verdict. The contention that the verdict is the result of passion and prejudice is sufficiently answered in what we have already said with respect to the testimony.

Counsel indulge also in very severe strictures upon the testimony given by the plaintiff, and point out various reasons why he is not entitled to credit. But this is not a matter for our consideration. The credibility of the witness and the weight to be given to his testimony were matters for the jury alone. The plaintiff is of foreign birth, evidently not wholly familiar with the English language, and may not always have expressed his meaning clearly, and may not have fully understood the questions put to him, and thereby under the lead of a skilled cross-examiner may have been led into inconsistent statements without any intention to commit perjury or to mislead the jury. In any event, it was the province of the jury to believe him if his story appeared to them worthy of credit. Neither can we say with counsel that the findings of the jury were grossly and inexcusably wrong. They had the witnesses before them, and we are bound to assume that they estimated the truth and bearing of testimony offered with candor and impartiality. There is no misconduct shown on the part of the jurors.

3. CREDIBILITY OF WITNESSES: weight of evidence.

III. Defendant having pleaded assumption of risk by the plaintiff because of his alleged continuance in the place of danger after having knowledge that the bat was loose, the trial court instructed the jury upon the issue thus made that the burden was upon the defendant to es-

tablish by a preponderance of the evidence that in so doing he knew and appreciated the peril to which he was exposed. This instruction is vigorously assailed as erroneous, but we think it is in full accord with the great weight of authority. Knowledge that the bat was loose was not necessarily knowledge of its present liability to fall. Knowledge and appreciation of the risk are always essential elements in the servant's assumption of risks arising from his master's negligence. See *Long v. Johnson,* 134 Iowa, 336; *Cushman v. Carbondale Co.,* 116 Iowa, 618; *Vohs v. Shorthill,* 124 Iowa, 471; *Calloway v. Agar,* 129 Iowa, 1; *Mace v. Boedker,* 127 Iowa, 721; *Gorham v. Stockyards Company,* 118 Iowa, 749; *Huggard v. Glucose Co.,* 132 Iowa, 724. Of the many other criticisms of the charge given to the jury most are grounded upon a clear misapprehension or misinterpretation of the substance and effect of the language used by the trial court. Other instructions excepted to are in harmony with the rules hereinbefore approved, and we shall not take time for their further discussion. The same may be said of the court's refusal of instructions asked in defendant's behalf.

*4. MASTER AND SERVANT: assumption of risks: burden of proof.*

IV. The defendant-prepared and requested the court to submit to the jury thirty-eight special interrogatories concerning many phases of the controversy. Of these the court submitted twenty-five and refused the remainder. If this ruling of the court be open to any just criticism, it should be based upon the fact that it burdened the jury with so many inquiries rather than upon its refusal to submit more. The practice of submitting the jury to a minute cross-examination upon its verdict under the guise of special interrogatories is one not to be encouraged. This method of undermining verdicts, entirely legitimate within proper limits, may easily be abused. The cases are very rare, where, if such interrogation be called for at all, the essential points may not be

*5. SPECIAL INTERROGATORIES.*

developed in less than a half dozen questions, and the issue now before us seems to be fairly within the scope of this generalization. The interrogatories refused so far as they related to proper subjects of such inquiry were fairly covered by those which were given.

V. Numerous exceptions have been preserved to rulings upon the introduction of evidence, but we find no prejudicial error therein. As is usual in the rapid fire of question, objection and answer which characterizes most trials of this kind appellant is able to point out several instances where objections to his questions were improperly sustained, yet in each instance where the error could be held prejudicial if the ruling were adhered to we find that the excluded testimony has afterward been permitted to go to the jury. Other rulings upon evidence of which appellant complains were clearly right or were of such character as to work no prejudice.

6. Exclusion of evidence: prejudice.

VI. Error is assigned upon the alleged inflammatory appeals by plaintiff's counsel to the jury. They are said to have pictured their client "down in the mine working in dangerous work," and declared "there is too much disregard of human life nowadays in such institutions." They denounced the miners testifying for the defense as "tools of the defendant," accused the defendant of want of sympathy with the plaintiff, and declared it would have "taken better care of one of its pit mules that was hurt," and in the zeal of the peroration counsel closing the argument said to the jury: "Your decision of this case does not only affect Steve Cinkovitch, but every other Austrian or Italian or any other person engaged in the mining operation, because it means that if they are injured while in the bowels of the earth, searching for black diamonds to add to the horde of the ill-gotten gain of the operator, that they have no recourse or remedy, and, if they bring suit to attain their

7. Argument of counsel: misconduct.

just rights, simply because they are Austrians they should be turned out of court and ignored as unworthy of consideration." Much of the language complained of must be condemned, and had it been objected to at the time and not withdrawn, or its tendency to prejudice the defendant neutralized by proper instructions and admonition by the court, we should feel bound to order a new trial, but no objection was made except in a single instance, when the objectionable statement was at once withdrawn, and upon such a record we are inclined to hold that defendant is not in position to urge the point in this court. Had the attention of the trial court been called to the matter, it would without doubt have met with proper rebuke, and the jury admonished to allow it no weight or influence in deliberating upon the verdict. So far as counsel's oratory dealt with mere figures of speech, without imputations upon the character and good faith of defendant and its witnesses or indulgence in merely inflammatory appeals, it affords nothing on which to hinge a reversal of the judgment below. A coal mining case without reference to the "bowels of the earth" and "black diamonds" would be a much duller affair than "Hamlet with Hamlet left out." Touches of sentiment are not necessarily out of order in a jury address, and appeals to the juror's love of humanity may sometimes be properly made by counsel. But the advocate here ventures into a field where pitfalls abound, and not infrequently allows the supposed effectiveness of this form of attack or defense to lead him into such recklessness in its use as will invalidate a verdict in his favor, though not every thrust or quip of this nature calls for such drastic punishment. It is only in exceptional cases that the unbiased judgment and common sense of the jury may not be trusted to assert themselves against the seductive influences of impassioned oratory. The views of the trial lawyer upon the right or wrong of arguments *ad captandum vulgus* depends largely upon his angle of vision. The distin-

guished counsel for appellant not infrequently appear for the poor plaintiff, and in similar actions they are no mean artists in painting to the jury the wrongs of their client, nor are they lacking in resource to defend such license upon appeal to this court. The position at the sharp end of the weapon is never quite as comfortable as that of the man who wields it, and, when in the vicissitudes of a general practice the advocate finds himself assailed with rhetorical missiles which he himself has been wont to employ with killing effect, and upon which he has come to look with a sense of proprietorship as a part of the equipment of his own oratorical armory, he experiences something of the disgust which is supposed to be felt by the eagle brought to earth by an arrow tipped with a feather from his own wing. The court cannot dictate or control arguments of counsel except to keep them fairly within the record. When the rules in this regard are transgressed, a timely objection interposed will rarely fail to secure a correction or withdrawal of the matter complained of.

The record is without reversible error, and the judgment of the district court is *affirmed*.