JOHN STODOLA, Appellant, v. CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellee.

**Master and servant:** INJURY BY MACHINERY: EVIDENCE. In an action by a servant for injuries received while using machinery, on the ground that the machine was negligently left unguarded, the plaintiff should be permitted to show that the machine which the jury examined during the trial was not then in the same condition with respect to one of its parts, essential to the safety of plaintiff, as when he was injured.

**Same:** NEGLIGENCE: INSTRUCTION. Where an action of negligence involved both a charge of failure to guard machinery and to furnish plaintiff a safe place to work, an instruction to the effect that the burden was on plaintiff to establish the charges of negligence alleged was erroneous, because requiring him to prove both grounds when he was entitled to recover upon proof of one only.

**Same:** UNGUARDED MACHINERY: ASSUMPTION OF RISK: INSTRUCTION. An instruction that if plaintiff complained of the unguarded condition of the machinery upon which he was injured and defendant promised to guard it within a reasonable time and he continued to work relying upon the promise, and if the injury of which plaintiff complained occurred within such time he could still rely upon the promise to guard being carried out in the immediate future, then the jury should find for plaintiff on the question of assumption of risk, was erroneous; as susceptible of

interpretation that "immediate future" might be considered as a reasonable time within which plaintiff could rely on the promise.

Same: ASSUMPTION OF RISK: KNOWLEDGE OF DANGER: INSTRUCTION. 4 A servant does not assume the risks incident to his work with unguarded machinery unless he knows and appreciates the danger therefrom and voluntarily or impliedly subjects himself to it.

Same. A servant does not assume such risks incident to his employment as he could have anticipated or foreseen, for he is not held to such a measure of watchfulness; and an instruction susceptible of such construction is erroneous.

Same: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. Where the evidence 6 tended to show that plaintiff was injured by slipping upon an uneven floor and thus falling upon an unguarded machine with which he was at work, not having previously examined the floor or complained thereof, the jury should have been instructed that he was not bound to anticipate that he might slip and fall, and that if he used ordinary care in operating the machine and without his own fault slipped and was injured thereby, he was not negligent.

*Appeal from Cedar Rapids Superior Court.*—HON. C. B. ROBBINS, Judge.

SATURDAY, MAY 6, 1911.

ACTION at law to recover damages for injuries received by plaintiff while working with an unguarded machine known as an universal or combination wood worker. Trial to a jury. Verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Rickel & Dennis,* for appellant.

*Wm. G. Clark* and *W. E. Steele,* for appellee.

DEEMER, J.—Prior to June 26, 1909, plaintiff had been working for defendant in its cabinet or mill department for about five weeks. He had been using the machine in question as a planer for about three days before the

accident, and at the work he was then doing about four hours. There was testimony to show that before using the machine he had complained to defendant's master mechanic about the unguarded condition thereof. Plaintiff's testimony with reference thereto was that the master mechanic promised to guard it as soon as the rush was over. We quote from his testimony in this connection as follows: "At this time we were working on the gurdlings, and I supposed he meant, by the rush being over, the finishing up of the upright posts and those posts I was working on and the gurdlings. I think that was the rush referred to. These machines were never guarded. It was five days after this conversation that I was injured." ·

On the day in question plaintiff was engaged about the machine rabbeting some posts, and he testified, in substance as follows:

I was standing on a hard brick floor with a smooth surface. As I was standing there doing my work, I slipped and fell upon this machine, on top of this knife. It caught the post and drew it over the knife, and my hand with it, and there is the result (exhibiting it to the jury). It was done as quick as lightning. It was making five thousand revolutions or so. . . . The back bed is as low as the front. The knives stuck out three-eights of an inch above the table. They were turning in the direction of myself towards the 'back stop.' Standing in front of the knives they were turning to the right. . . . I did not apply the post to the knives before I fell. I did not get that far. I got along all right, and no accident had happened to me until I slipped. My slipping was what caused the accident. I made no cut on the post I had until I fell, only just what gouged out when I fell. When I fell, I had not got the post in position. When it caught it was thrown to the right with much force. My two fingers from the thumb are cut down to the second joint from the end, and this third finger is cut down from the first joint to the end, and there was some little taken off my little finger. I had not worked with this kind of machinery before I worked there. The foreman set me at work at this machine. When I

took this post in my hand to cut it, I had to brace myself, before putting it upon the knives. In doing this I slipped. The brick on which I stood was hard and smooth and was lying flatwise. I did not notice this until after I was hurt. Had made no examination of it. I had no difficulty before that. . . . You could set this guard any height you want it. You could of course have it wider. In case I slipped or fell, this guard would have stopped my hand right there. This would not have affected the working of the machine in any degree. This machine I show is an exact model of the machine in question. It is a combination machine. . . . I have been employed in wood carving at the Cedar Rapids Woodworking Company and at the Gun Stock Factory, and I do the carving by hand. At the place where I worked there was no combination machine, but they had an underfeed planer, but I did not use it. They used a joiner and a planer, and I ran a piece on it once in a great while. I had been working for the defendant about two and one-half weeks at the bench work and about two and one-half weeks at the machine. That was all in the same shop where these machines were. . . . I started work on this machine Friday afternoon at five o'clock, and the accident occurred the next morning between nine and ten. I had done some planing and joining and ripsawing on this machine. Before I commenced this job working on the posts, I was working two or three hours a day and sometimes not more than fifteen minutes on the machine. Some days I would work a couple of hours, some days only fifteen minutes; it depended upon what I was doing. I never had had any talk with Mr. Veley about guarding the machine before that morning, and it was not mentioned again during that week. He said he would guard those machines as soon as the rush was over, and I supposed it meant until I got through with those posts. These posts were about six feet long and were cut out on both sides. I had already cut them on both sides about five-sixteenths of an inch. I could press the board up against the gauge and cut out the amount each time alike. I could push the board along the required length and then coming back take another sixteenth of an inch more. I had it back to the backstop and set it down on the knife about five sixteenths of

an inch, then I would raise her up again and set her down about five-sixteenths more and start her again taking up five-sixteenths each time. I would run her as far as I had to go on that piece, and then come back to the backstop again and set the piece on the knife five-sixteenths again, and run her again until I came to the backstop. I would cut it out by taking five-sixteenths cuts at a time to the width of the rabbet, that was about two and one-half inches wide and three-eighths inches deep. . . . I never made any complaint about the floor, never thought of it. The floor is all a brick floor, and I never noticed its condition particularly. There was no one else present but Mr. Veley and myself when we had this conversation. When he stated that he would put on a guard as soon as the rush was over, I simply said, 'All right.' At the time he told me he would guard this machinery as soon as the rush was over, I relied upon him doing so, and I would not have continued to work there with that machinery unguarded, unless he had made that promise. . . . At the time of my injury there was only about six posts more to do; that was a part of the bunch of the work that was on hand. We didn't get the posts finished; that was the particular job we were working on at the shops and the only work for the machine that I know of. . . . I am sure that I had a talk as stated with Mr. Veley about putting a guard on this machine in controversy.

There was ample testimony to show that the machine could have been easily and successfully guarded. True, defendant introduced evidence to the contrary; but this made an issue for the jury under proper instructions. There was also testimony to the effect that plaintiff was warned of the dangerous character of the machine before he received his injuries; but this was denied by plaintiff. At the close of the testimony defendant asked that the jury be permitted to visit the place of the accident and to examine the machine upon which plaintiff was injured. To this plaintiff consented, provided the conditions were the same then as at the time of the accident. Thereupon defendant's master mechanic was called, and, in answer to interrogatories propounded, by the court, testified that the

machine was in exactly the same condition as on the day of the accident, save as to what was called the "backstop" which could and would be adjusted in exactly the same position as when the accident occurred. Thereupon the jury was permitted to view the machine and the place of the accident. After the return of the jury, plaintiff asked that the master mechanic be called that he might cross-examine him to show that the machine was not in the same condition as when the plaintiff was injured, and he also asked that he be permitted to introduce additional testimony to show that the machine was not in the same condition; that a "backstop" was on it; but that it was not so adjusted as when plaintiff received his injuries. All this was denied, and the rulings are assigned as error.

Various rulings on the admission and rejection of testimony are complained of, and many of the instructions are challenged.

Error is also predicated upon the court's failure to give certain requests. It is also claimed that the trial court unduly limited plaintiff's counsel in his argument to the jury.

I. We shall first take up some of the rulings on the admission and rejection of testimony. That the trial court was in error in denying plaintiff the right to show that the machine which the jury had examined during the course of the trial was not in the same condition as at the time of the accident is, as we think, very clear. The so-called "backstop" was a very important part of the machine. It was not only a brace, but a guide for the workman, and we think the change in its condition or adjustment was a most important matter to be considered by the jury. This "backstop" is hard to describe in such a manner so that it can be understood, and it is enough to say that in our opinion it was a very important and necessary part of the machine, and its proper adjustment very essen-

1. MASTER AND SERVANT: injury by machinery: evidence.

tial to the safety of the work which plaintiff was doing when he received his injuries.

Very many objections are made to rulings on testimony—so many, indeed, that to consider each one would unduly extend this opinion without any material benefit either to the parties or to the profession at large. Some erroneous rulings were made which were afterwards cured. Others, while perhaps erroneous, were without prejudice, and save as heretofore indicated each party was given the right to introduce all his material and relevant testimony, except perhaps as to some minor matters which were of such a character as that they would not justify a reversal.

II. The case was tried on the theory that, although defendant was guilty of a violation of the factory act in not properly guarding its machinery, still plaintiff may have assumed the risk incident to the use of unguarded machinery. It was tried before the decision in *Poli v. Numa Block Coal Co.*, 149 Iowa, 104, and other like cases, and what we may say of the propositions of law submitted on this appeal must be considered with reference to the manner and method of trial.

Two specifications of negligence were made: One, that defendant failed to guard the machine as provided by law; and, the other, that defendant did not furnish plaintiff a safe place to work, in that the floor 2. SAME: negligence: instruction. upon which he stood was rough and uneven and so left that while plaintiff was operating the machine he was likely to stumble, slip, or trip thereon. It in its charge to the jury the trial court said:

(10) The burden of proof is upon the plaintiff to establish by the greater weight or value of the evidence, which does not necessarily mean the greater number of witnessses, the charges of negligence made by him as set forth in the statement of issues made to you by the court, that he was injured by reason of the negligence of the defendant, as claimed by him in his petition; that the plaintiff him-

self was not guilty of any negligence which contributed to his injury. . . .

This was erroneous for the reason that, if plaintiff established either ground of negligence, he was entitled to recover. *Kaline v. Stover,* 88 Iowa, 247.

III. Bearing upon the question of complaint and promise to repair, the trial court instructed as follows:

(6) You are to determine from the evidence whether or not the plaintiff complained to defendant's foreman of the unguarded condition of the machine on which he was employed, and whether or not the defendant's foreman promised to affix a guard to said machine; and if you find from the evidence that plaintiff did make such a complaint to defendant's foreman, Veley, and that thereupon said Veley promised to guard said machine within a reasonable time, and that the reason why plaintiff continued in the service in which he was engaged was because he relied upon said promise to guard, *and that said injury of which plaintiff complains occurred within such a time after said promise that plaintiff could still reasonably rely upon the promise to guard being carried out in the immediate future,* then you must find for the plaintiff upon the question of the assumption of risk; but if you find from the evidence that the plaintiff made no complaint of the unguarded condition of the machinery, of which the evidence shows he was fully aware, or if you find that after making said complaint the defendant or his foreman made no promise to guard same, or refused to guard it, or that the promise to guard was made, but at a time so far in the future that plaintiff could not expect a fulfillment thereof within a reasonable time, and that thereafter the plaintiff was injured on account of a risk ordinarily and naturally incident to the service in which he was engaged, then your verdict must be for the defendant.

3. SAME: unguarded machinery: assumption of risk: instruction.

The italicised portion of this instruction is complained of, and we are constrained to hold it erroneous. The only answer to the complaint made against it is that the trial court used the words "immediate future" as the equivalent

of "within a reasonable time." Grant that this is so, yet we have no means of knowing whether the jury regarded reasonable time as the immediate future, or immediate future as a reasonable time. If the former, then the instruction was manifestly erroneous. *Pieart v. Railroad,* 82 Iowa, 160; *Stoutenburgh v. Dow Co.,* 82 Iowa, 184; *Foster v. Railway Co.,* 127 Iowa, 88; *Buehner v. Creamery Co.,* 124 Iowa, 445; *McFarlan Co. v. Potter,* 153 Ind. 107 (53 N. E. 465); *Miller v. White Bronze Monument Co.,* 141 Iowa, 701.

Instruction 5 read as follows:

You are instructed that the plaintiff, when he entered the service of the defendant, assumed all the ordinary and usual risks and hazards of the service, and that if he continued in such service with full knowledge of the unguarded condition of the machine, without complaint, and without promise of repair on the part of the defendant, you will find that he assumed all the risks which were ordinarily and naturally incident to the service in which he was engaged, and if you find that his injury as claimed was caused by such risks, your verdict must be for the defendant. But you are instructed, in this connection, that the burden of showing that the plaintiff did assume the risk of his employment is upon the defendant, and unless the defendant satisfied you by greater weight or value of the evidence that the plaintiff did so assume all the risks which were ordinarily and naturally incident to the service, as hereinbefore stated, you should find for the plaintiff upon this issue.

4. SAME: assumption of risk: knowledge of danger: instruction.

This was erroneous in so far as it applied to unguarded machinery, in that it omitted the question of plaintiff's knowledge of the danger. *Huggard v. Refining Co.,* 132 Iowa, 739; *Shebeck v. National Cracker Co.,* 120 Iowa, 419; *Wilder v. Cereal Co.,* 134 Iowa, 462; *Cinkovitch v. Thistle Coal Co.,* 143 Iowa, 595, and cases cited.

IV. "You are instructed that, where an employment is attended with danger, the servant engaging in it assumes

the measure of ordinary perils which are incident to it.
This applies only to perils or risks ordinarily

5. SAME.   incident to the service, and not to those
which are extraordinary, or such as could not have been
foreseen or in any way anticipated by the servant."

The latter clause is not clear. If thereby the trial
court intended to hold the plaintiff to the assumption of
such risks as he could have foreseen or anticipated, it is
wrong, for he was not bound to any such measure of
watchfulness. We point out the difficulty in order that
the instruction may not be repeated on a retrial.

V.   Plaintiff asked the following instruction:

(5) That, under the evidence in this case, plaintiff
was not bound to anticipate that he might slip and fall
upon the knives in question, and if you find from the evi-
dence that plaintiff used ordinary care in the use of said
machine, and that while so engaged he slipped without fault
on his part, and was thrown upon the knives and injured,
then and in that event you are instructed that plaintiff
was not guilty of contributory negligence.

This or something like it should have been given. The
facts as testified to by plaintiff called for some such instruc-
tion.   *Jeffrey v. Railroad*, 56 Iowa, 546; *Callopy v. At-*

6. SAME:   *wood*, 105 Minn. 80 (117 N. W. 239, 18
   contributory   L. R. A. (N. S.) 593); *Snyder v. Board*
   negligence:
   instruction.   *Co.*, 110 Minn. 40 (124 N. W. 451); *Abel
v. Hardwood Mfg. Co.*, 107 Minn. 214 (120 N. W. 359,
121 N. W. 916); *Nadau v. White River Co.*, 76 Wis. 120
(43 N. W. 1135, 20 Am. St. Rep. 29); *Lore v. Mfg. Co.*,
160 Mo. 608 (61 S. W. 678).

VI.   Some other questions are discussed; but as they
are not likely to arise upon a retrial, which will doubtless
be had upon the theory that there was no assumption of
risk, we do not consider them.

For the errors pointed out, the judgment of the trial
court must be, and it is, *reversed.*