LOUISE A. WINN, Administratrix, Plaintiff and Appellee, v. THE TOWN OF ANTHON, Defendant and Appellant.

**MASTER AND SERVANT:** Servant Employed by Non-Employing 1 Servant—Consent of Master. One who in good faith enters upon the master's work at the request of a servant in actual charge of the work, and with the express or implied consent of the master, is entitled to the protection due a servant though he may not be entitled to recover wages from the master.

PRINCIPLE APPLIED: A marshal was appointed by a town council, and among other duties was to operate the waterworks plant and engine, though the ultimate supervision rested with the council, the members of which visited the plant several times a year. The next day after the marshal was appointed he hired one Winn, whose general work was at an elevator close by, to start and stop the engine at the waterworks at stated intervals, furnished him a key and paid Winn $10 per month out of his own salary. Winn, in good faith, and to the knowledge of people generally, performed this work daily for some months. The mayor

and each councilman testified that the marshal had no authority to employ Winn and that they did not know of such employment. A former marshal had handled the work in the same way but not through Winn. On one occasion the machinery was repaired by Winn and the marshal. There was direct evidence that some members of the council knew of Winn's work. Winn was injured by the alleged negligence of the defendant. *Held*, question for the jury whether Winn's employment was with the express or implied authority of the council.

**MASTER AND SERVANT:** Assumption of Risk—When a Defense—
2 **Factory Act.** Assumption of risk constitutes no defense to a claim for injury occasioned by the failure of an employer to comply with a statute enacted for the protection of employees. (Sec. 4999-a2 Sup. Code.)

PRINCIPLE APPLIED: Deceased was employed in operating defendant's engine at its waterworks plant. A set screw on a shaft was unguarded. The clothing of deceased was caught by this set screw and he was killed. *Held*, defendant under our Factory Act, Sec. 4999-a2, would not be permitted to plead assumption of risk. (And see Sec. 4999-a3.)

**MASTER AND SERVANT:** Impracticability of Guarding Machinery
3 —Burden of Proof. If it be "impracticable" to guard machinery as required by our Factory Act (Sec. 4999-a2 Sup. Code) defendant must assume the burden to so show.

**MASTER AND SERVANT:** Factory Act—Guarding Machinery—Un-
4 authorized Change—Effect. If a master so sets up his machinery that it requires no guard, shield or covering under our Factory Act (Sec. 4999-a2) and if without the master's knowledge or consent or fault the machinery is changed, the master is not responsible for such change. ("Failure to discover" change not in the case.)

PRINCIPLE APPLIED: A shaft connecting defendant's engine with a pump had a "clutch" thereon fastened by "set-screws." Evidence tended to show that when the deceased went to work only "countersunk" set-screws flush with the surface of the shaft were used. Deceased was caught on the shafting and killed. "Head" set-screws, projecting a half inch from the shafting, and on which projections the clothing of deceased had caught, were then found on the shafting. Defendant claimed it never consented to or knew of the use of "head" set-screws upon the shafting until the accident. Evidence tended to show that deceased had prior to the accident purchased "head" set-screws of the

same kind as found on the shafting when he was killed. The court instructed on the theory that defendant must show that the deceased substituted ''head'' set-screws for the ''counter-sunk'' set-screws. *Held;* error—that the burden was on plaintiff at all stages to show defendant's use of set-screws—that it was immaterial who made the change if without the knowledge, consent or fault of defendant.

**NEGLIGENCE:** Evidence of—Insufficiency. No negligence is shown on the following state of facts: The clothing of deceased was caught by a set-screw on a shaft in an engine room and deceased was killed. Negligence was predicated on the claim that a water pressure gauge which deceased had to read was placed too close to the shaft. It appears probable that the gauge was three feet from the shaft. The letters on the gauge were such that they could be read at a distance of several feet.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

WEDNESDAY, FEBRUARY 10, 1915.

ACTION by an administratrix for damages for alleged negligence resulting in the death of Lester Winn. The plaintiff alleged that the decedent was an employee of the defendant and engaged in operating an engine in the waterworks plant of the defendant. The answer pleaded a general denial, contributory negligence, and assumption of risk. There was a verdict for the plaintiff for $20,000. Upon motion for new trial the trial court gave to the plaintiff the election to accept judgment for $8,000 and judgment was entered accordingly. The defendant appeals.—*Reversed.*

*O. D. Nickle, Henderson & Fribourg,* for appellee.

*Shull, Gill, Sammis & Stilwill, H. B. Walling,* for appellant.

EVANS, J.—The petition alleged that the defendant is and was an incorporated town and that it owned and operated a waterworks system, the power being produced by the use of a gasoline engine; that the decedent was employed to operate

the gasoline engine; that his employment began about the first of July, 1912, and continued until the time of his death January 27, 1913; that the decedent was killed while engaged in the duties of his employment. Two specifications of negligence were pleaded: (1) that certain set screws were used upon the shafting which connected the engine and pump and that such set screws protruded about one-half inch above the surface of the shafting and the same were not properly guarded; (2) that the defendant negligently located its water pressure gauge in a dangerous place in that it was unnecessarily near the set screws and thereby increased the danger therefrom. Both specifications of negligence were submitted to the jury. In support of the first specification the plaintiff relied upon the Factory Act and particularly upon Sec. 4999-a2.

I. One of the principal issues that developed under the evidence upon the trial was whether the decedent was an employee or was a mere volunteer or trespasser. Winn was actually employed by Sheffield. Sheffield was the town marshal of the defendant. Pursuant to such employment Winn entered upon his duties and performed them daily for nearly seven months up to the date of the accident. For the defendant it was made to appear by the testimony of the mayor and each member of the town council that Sheffield had no authority to employ him and that no member of the town council knew of the employment; that the duty to operate the pump and waterworks devolved upon Sheffield himself, the same being a part of his stipulated duties as marshal; that Sheffield employed Winn on his own account and paid him out of his own purse to do his work. It appears that Winn's main occupation consisted of work in an elevator which was situated a short distance from his home and that the waterworks plant was located between his home and such elevator. He was employed by Sheffield to start and stop the engine and pump at appropriate intervals. This he was enabled to do con-.

1. MASTER AND SERVANT: servant employed by non-employing servant: consent of master.

veniently because of the relative location of the plant between the elevator and his home. His compensation was $10 a month which was paid to him by Sheffield. It was urged therefore that he was not an employee of the defendant and that the provisions of the Factory Act were not available to the plaintiff herein. This denial of authority and consent was met by the following considerations put forward by the plaintiff. The scope of the marshal's authority was not definitely fixed by any written resolution or ordinance. He was expected to perform the general duties of a marshal; to drag the streets when necessary; and to operate the waterworks plant. Some degree of supervision of the plant and its machinery devolved upon him although it appeared that the ultimate and general supervision was reserved to the city council. Each member of the council visited the plant several times a year. Sheffield received for his services $45 a month. He employed Winn the next day after his own appointment. Previous to this time and continuing up to April, 1912, one Heath had been the town marshal and he had employed the witness Badgerow to do the same work as was done by Winn. The defendant is a town of six or seven hundred people. Their plant is located close to the business part of town. There was no concealment or bad faith on the part of Winn. Sheffield furnished him with a key. His services were performed openly and to the knowledge of citizens of the town. In November the clutch became out of repair. This was reported by Winn to Sheffield who reported it to the city council. Sheffield and Winn removed the clutch and a member of the council came after it and sent it off for repairs. When it was returned Winn assisted again in replacing it. It is claimed however that Winn was not actually present when the councilman took the clutch for repair. There was direct evidence of actual knowledge of Councilman Lucas of Winn's work and perhaps the same ought to be said as to Councilman Meyers. Upon the state of facts thus disclosed we think the case comes well within the rule applied in *Aga v. Harbach,* 127 Iowa 144, and that it

was for the jury to say whether the employment of the decedent and the rendition of services by him pursuant thereto was with the consent of the town council either express or implied. The rule is fully discussed in the cited case and we need not repeat the discussion. The jury necessarily found with the plaintiff upon this question.

The issue of fact being found for the plaintiff at this point it disposes also of the question of assumption of risk, such plea not being available to the defendant under the circumstances. *Poli v. Numa Coal Co.*, 149 Iowa 104; *Stephenson v. Sheffield Brick and Tile Co.*, 151 Iowa 371; *Stodola v. C. R. R. Co.*, 152 Iowa 37; *Murray v. C. R. I. & P. Co.*, 152 Iowa 732; *Verlin v. U. S. Gypsum Co.*, 154 Iowa 723; *Lamb v. Wagner Mfg. Co.*, 155 Iowa 400.

2. MASTER AND SERVANT: assumption of risk: when a defense: factory act.

II. The shafting between the engine and the pump-frame was about two feet long. Upon this shafting and midway between the engine and the pump-frame was the clutch and this was fastened to the shafting by means of the set screws in question. These set screws were between the clutch and the flywheel and occupied a few inches of the surface close to the clutch. The entire distance between clutch and flywheel was about one foot. It is urged for appellant that it was impracticable if not impossible to guard such set screws any further than they were guarded by their proximity to the clutch; that covering of any kind would interfere with the oiling of the clutch. It is sufficient to say that the burden of this contention rested upon the defendant. *Kimmerle v. Dubuque Altar Co.*, 154 Iowa 42.

3. MASTER AND SERVANT: impracticability of guarding machinery: burden of proof.

It appears also from the defendant's own testimony that "counter-sunk" set screws could be and had been used for such purpose and that by this manner the head of the screw was rendered flush with the surface of the shafting so as to present no head or projection. The screws actually in use at the time of the accident were known as "head" set screws

and they presented a projection of about one-half inch above the surface of the shafting. It was upon such projection that the clothing of the decedent was caught.

III. There is a further controversy in the record concerning the set screws in use. For the defendant it was made to appear by considerable very direct evidence that when Winn

4. MASTER AND
SERVANT: fac-
tory act:
guarding ma-
chinery: un-
authorized
change:
effect.

entered upon his work only "counter-sunk" set screws were in use upon such shafting and that this was true at the time the clutch was removed and replaced again. It was also made to appear that on December 15th, Winn purchased at one of the hardware stores "head" set screws of the same kind as were found upon the shafting immediately after his death and that neither the marshal nor any member of the city council had ever consented to or known of the use of "head" set screws upon such shafting prior to the accident. From such evidence the inference naturally contended for by the defendant was that Winn himself without authority substituted the "head" set screws for the "counter-sunk" set screws.

In submitting this question to the jury the trial court by instruction 11 laid an undue burden upon the defendant. It declared the evidence of the defendant thereon to be wholly circumstantial and instructed the jury that they could not find from such evidence that Winn substituted the set screws unless that was the only reasonable conclusion that could be drawn from the evidence. The instruction was erroneous. The burden to show the use of the set screws by the defendant was upon the plaintiff in the first instance. That burden was not shifted in the trial of the case. It was not legally necessary for the defendant to show that Winn made the substitution. If the officers of the defendant had performed their duty and had properly guarded the screws by sinking them into the shafting and if without their knowledge, consent or fault they were changed by anyone, then the defendant was not responsible for such change. It might become respon-

sible later for failure to discover, but that question is not now involved. If it were, Winn might not wholly escape a similar obligation to discover the change and report it to his superiors.

IV. As already indicated one of the specifications of negligence was based upon the claim that the water pressure gauge was negligently placed too close to the shaft in question.

5. NEGLIGENCE: evidence of: insufficiency.

The theory is that the decedent was induced to go dangerously near the shafting in order to read the dial of the gauge. We are unable to discover from the evidence just how close to the shafting it was. It does appear that a certain lever which was used to throw the pump in and out of gear was located about a foot and a half to the right of the set screws and that the water gauge was located about a foot and a half to the right of the lever. The figures upon the dial indicating the water pressure were one-half inch in dimension. In another circle the figures indicating the depth of the water in the mains were one-fourth inch in dimension. Manifestly there was always a consistent relation between the pressure of the water and its depth. The figures in either circle were readily readable at a distance of several feet. We are able to find nothing in the evidence in this record which would justify a finding of negligence in the location of such gauge. No attempt has been made in appellee's brief to point out such evidence. The trial court submitted this specification to the jury as an issue. Such submission was not justified by the record before us.

V. In view of the fact that a new trial must be ordered for the reasons above indicated we need not pass upon the question of whether a new trial ought to be ordered on account of the alleged passion and prejudice of the jury. As indicated by the reduction in the trial court the verdict was grossly excessive. Whether there was passion and prejudice upon the first trial is a question which cannot affect a second trial and we give it no further consideration.

For the errors indicated a new trial must be ordered. The judgment below is accordingly—*Reversed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.