124  471
127  245

124  471
s130  540

124  471
f140  215

124  471
j143  601

## C. M. Vohs v. A. E. Shorthill Company, Appellant.

**Master and servant:** DANGEROUS EMPLOYMENT: INEXPERIENCED WORKMAN: WARNING. Under the evidence it is held, that the nature of the danger incident to plaintiff's employment as an inexperienced workman, was such as to take the case to the jury on the question of defendant's negligence in failing to give proper warning, and it cannot be said as a matter of law, that the plaintiff as a reasonable man should have known the danger.

**Assumption of risk.** Under the evidence in the case it cannot be said, as a matter of law, that plaintiff assumed the risk of the danger incident to his employment.

**Evidence:** OPINION. The testimony of plaintiff as to his belief of the cause of his injury not inconsistent with the facts, there being no other cause of the injury shown, was not prejudicial error.

**Evidence.** Evidence as to the danger of plaintiff's employment and the usual means of avoiding it was competent.

**Evidence:** STATEMENTS OF AGENT. A corporation is not bound by the statements of its officers or agents while on the witness stand, and a transcript of the same is inadmissible as against the corporation in a subsequent action.

**Withdrawal of issue.** Failure of the court to specially withdraw from the jury an issue which had no support in the evidence, is held in this case to have been without prejudice.

**Cost bond.** Where it is made to appear that a plaintiff has become a nonresident after commencement of suit, a cost bond may be required after answer has been filed.

*Appeal from Marshall District Court.*— Hon. G. W. Burnham, Judge.

WEDNESDAY, JULY 13, 1904.

ACTION to recover for personal injuries received by plaintiff while an employe in defendant's foundry and machine shop. Verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*J. L. Carney,* for appellant.

*Boardman, Aldrich & Lawrence* and *F. E. Northup,* for appellee.

McClain, J.— The evidence tends to show the following facts: The plaintiff, without previous experience in working about a foundry or machine shop, or any place of a similar character, entered the employ of defendant, and was directed by the general manager, Speers, to put himself under the charge and direction of one Johnson, the superintendent of one branch of defendant's business. Johnson kept plaintiff employed for four days in cutting rivets for the purpose of separating old bridge beams, and then, on the representation of one Slingman, who had charge of the blacksmith shop, that a man was needed there to hold steel rails while they were being cut into short lengths with a cold-chisel, Johnson told the plaintiff to go to the blacksmith shop and help in that work. The steel rail on which the blacksmith who held the cold-chisel and managed the rail, and his assistant, who swung the sledge, were working, was resting with one end, at the place where it was marked to be cut off, on the anvil, and with the other on a carrier some distance from the anvil; and plaintiff assisted in handling it by taking hold of it between the carrier and the anvil, and turning it or moving it as Slingman directed. At first the plaintiff stood about eight feet away from the anvil, but soon afterward Johnson came in, and directed plaintiff how to hold the rail; placing him about three feet from the anvil. After plaintiff had been employed in this way for about an hour, a fragment or a sliver of steel struck him in the left eye, causing an injury which resulted in the loss of sight in that eye, and the impairment of the efficiency of the other eye.

The court submitted to the jury three alleged grounds of negligence on the part of defendant: First, in not providing plaintiff a safe place to work; second, in not warning

plaintiff of the danger, and instructing him how the same could be avoided; and, third, in ordering plaintiff into a position of danger without warning or cautioning him concerning the danger, knowing plaintiff to be inexperienced.

The first contention of appellant is that there is no evidence to support any one of these alleged grounds of negligence, and that the court, on defendant's motion, should have directed a verdict for the defendant, or, on the motion for a new trial, should have set aside the verdict as without support in the evidence. There seems to be no evidence that the defendant was negligent in failing to provide the plaintiff with a safe place to work. There was no failure to furnish the usual appliances for such work, and no omission shown to furnish any safeguards such as were usual or reasonably necessary to enable the plaintiff to carry on the work to which he was assigned with as great safety as was practicable, consistently with the nature of the work to be done. But the principal controversy is as to whether there was any peculiar danger incident to the employment, and in the place where plaintiff was directed to work, which plaintiff, as an inexperienced workman, did not know, or might not reasonably have known or appreciated, and of which it was the duty of Speers or Johnson to apprise him, in order that he might avoid it. Witnesses who were familiar with similar work testified on behalf of plaintiff that there was danger of bits of steel flying from the rail or from the chisel or the sledge, and that they were likely to fly with such swiftness that they were invisible, and were calculated to inflict severe injury on the eyes of a person within range, unless such person took care to guard against the danger by wearing a hood, and inclining the head as the blow was struck with the sledge, so that the eyes could be protected. It appears to us that the precaution to be taken was not unreasonable, nor inconsistent with the prosecution of the work in which plaintiff was engaged, and the danger, we think, was one which an inexperienced workman would not

fully appreciate; and we reach the conclusion that the failure of Speers and Johnson to warn the plaintiff as to this danger, and instruct him as to the method of lessening or avoiding it, might constitute negligence on the part of the defendant, and, under the evidence, was a proper matter to submit to the jury, as tending to show liability on the part of defendant. It would not be profitable to discuss the numerous cases cited on each side with reference to the duty of the employer, on the one hand, to warn the employe against dangers incident to the employment, of which he had no knowledge or which he coul dnot appreciate, and, on the other hand, to the effect that the employe is bound to look out for and protect himself against such dangers as he knows or may, in the exercise of reasonable care, understand and appreciate, as incident to the employment. The rules of law to be applied in such cases are reasonably well settled by the decisions of this court. See *Newbury v. Getchel & Martin Lumber Co.,* 100 Iowa, 441; *Yeager v. Burlington, C. R. & N. R. Co.,* 93 Iowa, 1; *McCarthy v. Mulgrew,* 107 Iowa, 76. And see, also, *Mather v. Rillston,* 156 U. S. 391 (15 Sup. Ct. 464, 39 L. Ed. 464). The pivotal question in applying these rules to the present case is as to whether the danger from flying slivers or particles of steel was one which plaintiff, as a reasonable person, though not experienced in the particular work, should have understood and appreciated. We think that the evidence introduced with reference to the nature of this danger was such as to carry the question to the jury. It cannot be said, as a matter of law, that plaintiff should, as a reasonable man, have known that, in cutting a steel rail with a cold-chisel, particles of steel, flying so swiftly as to be invisible, were likely to be thrown so as to injure the eyes of persons standing near, unless some precaution should be taken to protect the eyes against them.

Similar considerations apply to the question of assumption of risk, which is raised on behalf of appellant. An employe does not assume the risk of a danger of which he has

no knowledge, or which, as a reasonably prudent person, he

**2. ASSUMPTION OF RISK.** is not bound to anticipate, or the danger which he is not in a situation to fully appreciate. *Stomne v. Hanford Produce Co.,* 108 Iowa, 137; *Olson v. Hanford Produce Co.,* 111 Iowa, 347; *Olson v. Hanford Produce Co.,* 118 Iowa, 55; *Sankey v. Chicago, R. I. & P. R. Co.,* 118 Iowa, 39; *Carver v. Minneapolis & St. L. R. Co.,* 120 Iowa, 346. We cannot say, as a matter of law, that plaintiff, without experience in this particular kind of work, was bound, as a reasonably prudent person, to understand that particles of steel, invisible on account of the swiftness of their flight, were likely to strike him in the eye, and that he therefore voluntarily assumed such danger by continuing in the employment without objection.

These considerations dispose of the contention made for appellant that the court erred in not directing a verdict in its behalf, and in not setting aside the verdict for plaintiff as without support in the evidence.

Various rulings by which answers of witnesses over defendant's objection were permitted, or on plaintiff's objection were excluded, are urged. We shall only notice those which seem to be especially relied upon.

Plaintiff was allowed to testify that he believed that the piece of steel which penetrated his eye came from the chisel or the hammer, and, in this connection, counsel for appel-

**3. EVIDENCE: opinion.** lant urges that there is no competent evidence that the particle of steel came from this source, rather than from some other; and he contends, also, that, as plaintiff was standing with his right side toward Slingman, who was holding the chisel, and the injury was in plaintiff's left eye, the indications were that the particle of steel which penetrated his eye did not come from the chisel or the hammer. But considering plaintiff's evidence as to how he was standing, it is not at all unreasonable to assume that his head was sufficiently turned so that his left eye was in the line of a particle flying from the chisel, and there is no

evidence of any other source from which a bit of steel could have been thrown with such violence as to penetrate the eye. We think that the admission of the statement by the witness of his conclusion that the bit of steel causing the injury came from the chisel or hammer was not such prejudicial error as to warrant a reversal.

Another witness, who was an experienced and practical machinist, was allowed to testify that, in the operation of cutting a steel rail with a cold-chisel, fragments were liable to fly off with great force in the line of the rail, and that persons engaged in such work generally wear a cap with a visor pulled down, and usually duck their heads a little when the blow is struck. It seems to us that this evidence was competent, and that the objections to the questions were not well taken.

4. Evidence.

The plaintiff was allowed to introduce in evidence, over the defendant's objection, the transcript of certain portions of the testimony of Speers and Johnson given on a former trial of the same case; the reporter who made the transcript having identified it and testified as to its correctness. This testimony was not introduced for the purpose of impeachment, but as containing declarations of Speers and Johnson as agents of the corporation. But we think it is clear that the corporation is not bound by declarations made by its officers or agents while on the witness stand. While testifying they are not acting for the corporation, but are speaking for themselves individually. It is well settled that the declarations of an agent are binding upon his principal only when made while the agent is engaged in the business in reference to which the statement is made, and while acting within the scope of his authority. *Howe Machine Co. v. Snow,* 32 Iowa, 433; *McPherrin v. Jennings,* 66 Iowa, 622. We know of no authority whatever for holding a principal bound by the declarations of his agent, while made on the witness stand. That the evidence thus erroneously admitted was

5. Evidence: statements of agent.

calculated to prejudice the defendant's case is also clear. The declarations of Speers thus shown were that he had seen some fragments fly in the cutting of steel by chisel and hammer, and considered that the operation was somewhat dangerous to the eyesight of the persons engaged therein, and that he had not warned the plaintiff of any danger; and the declarations of Johnson thus proven were to the same effect. This was a vital matter in the case, and the plaintiff should not have been allowed to get before the jury the testimony of these witnesses on a former trial, on the theory that such testimony amounted to declarations of the defendant, made through these persons as its agents, and binding upon it. Both the witnesses were examined for the defendant, and, if they made statements inconsistent with their former testimony, they could have been impeached by proof of their declarations on the former trial, a proper foundation having been laid. But as already stated, this evidence was not introduced for impeaching purposes, and no foundation for its use for such purposes was laid, and the objections made to it on behalf of the appellant should have been sustained.

Complaint is made as to certain instructions given by the court; the first being that the court did not expressly withdraw from the jury certain allegations of negligence, of which there was no proof whatever. It would, perhaps, have been conducive to clearness, had the court expressly directed the jury not to consider the allegations which were not submitted. But probably there was no prejudicial error in this respect, as the allegations which were submitted were clearly stated. As already indicated, we think there is no evidence in support of the allegation that the defendant was negligent in not providing plaintiff a safe place to work, and the court should not have submitted that allegation as one on which the jury might render a verdict for the plaintiff. The other criticisms of the instructions are substantially disposed of by the views already expressed with reference to the nature of defendant's

6. Withdrawal of issue.

liability. It is, perhaps, proper to say that, in our judgment, there was evidence tending to show that Johnson was the vice principal of the plaintiff while the latter was working in the blacksmith shop, and that the duty of giving warning to plaintiff of any danger in the employment, which, as a reasonably prudent man, he would not appreciate or understand, rested upon Johnson, and that for any negligence on the part of Johnson in failing to give such warning the defendant would be liable.

Counsel for defendant complains, also, of the refusal of the court to require plaintiff to give security for costs, it having been made to appear after the defendant had answered that plaintiff was a nonresident of the State. 7. COST BOND. Under Code, sections 3847, 3849, relating to security for costs, it has been held that a motion for such security must be made before answering, even though the plaintiff had not become a nonresident until after the defendant's answer was filed. *Gilbert v. Hoffman,* 66 Iowa, 205. But by chapter 100, page 55, Acts 27th General Assembly, the latter of these two sections was amended so as to provide that if the plaintiff, after the institution of the suit and before its final determination, becomes a nonresident, " he may be required to give security for costs, in the manner provided in the preceding sections of this chapter." This amendment expressly strikes out in the last clause the words " and under the restrictions," and we think the intention was to allow the application for security for costs to be made subsequently to the filing of the answer, where it appears that plaintiff has become a nonresident after the institution of the suit. However, it did not appear by the showing in support of the motion that plaintiff had become a nonresident subsequently to the institution of the suit, and the ruling of the trial court was therefore correct.

For the error pointed out in admitting portions of the transcript of the testimony of the witnesses Speers and John-

son given on the former trial, the judgment of the lower court
is REVERSED.