Louisa County National Bank, Appellant, v. Levi P. Burr, Appellee.

**PRINCIPAL AND AGENT:** Declarations of Agent While Testifying.
1 The rule that the declarations of an agent are binding upon his principal when made while the agent is engaged in the business in reference to which the declaration is made, and while acting within

the scope of his authority, does not embrace statements made by the agent *while testifying as a witness in obedience to a subpoena in a cause in which the principal was not a party.*

**BILLS AND NOTES:   Holdership in Due Course—Knowledge of Agent of Purchaser.** Knowledge on the part of an agent, who purchased a note for his principal, of the fraudulent character of the note, is imputed to the principal.

**BILLS AND NOTES:   Holdership in Due Course—Fraudulent Negotiation.** The purchaser of a negotiable promissory note is not a holder in due course if his agent in the purchase of the note had knowledge of a contract provision providing for the return of the note to the maker if the consideration for which the note was given was not satisfactory.

**TRIAL:   Argument—Right to Open and Close Argument.** One who claims to be a holder in due course of a negotiable promissory note because he had no knowledge of fraud in the inception of the note has the right to open and close the argument. But the denial of such right is not necessarily reversible error.

**BILLS AND NOTES:   Indorsement When Payable to ''Myself''—Effect.** The maker of a negotiable promissory note payable *''to the order of myself''* does not increase his liability by indorsing the note in blank. In other words, such indorsement does not constitute the maker an *indorser,* in the ordinary meaning of the term.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

JUNE 24, 1924.

ACTION upon a promissory note. Verdict and judgment for defendant, and plaintiff appeals.—*Reversed.*

*Molsberry & Reaney* and *Messer, Clearman & Olsen,* for appellant.

*Wilson & Evans,* for appellee.

STEVENS, J.—I. The note in suit is for $4,000, bears date December 8, 1918, is payable to·''Myself,'' and signed as maker and indorsed by Levi P. Burr, appellee herein. The note was

1. PRINCIPAL AND AGENT: declarations of agent while testifying. delivered to one S. P. Lalor, an agent for the Daniel Hays Company, of Idaho, for the purchase of a tract of land known as Lots 7, 8, 9, and 10 in Block 28, Chowchilla Ranch, Madeira County, California, containing 80 acres, more or less, according to government survey. Contemporaneously with the execution of the note, appellee executed a contract with the Daniel Hays Company for the purchase of the land above described, conditional, however, upon his approving same within 90 days after the date on which the instruments were executed. On December 21, 1918, S. P. Lalor, acting for the land company, transferred the note to the appellant bank for a valuable consideration. Within the time allowed by the contract, appellee made a trip to California, inspected the land, found it to be practically without value, and gave prompt notice to the land company of his disapproval thereof. Upon the giving of this notice, the contract, by its terms, ceased to be binding upon appellee. The defenses set up to the note were that it was procured by fraud, and that its delivery was conditional upon the final approval by appellee of the land described in the contract, and that its negotiation to appellant, immediately upon its execution, was in breach of faith, and that appellant is not a bona-fide holder thereof for value, within the meaning and contemplation of the Negotiable Instruments Law.

All of the transactions with Lalor were conducted on behalf of appellant by E. R. Lacey, president. Evidence was introduced to show that Lacey, with four or five other citizens residing in Columbus Junction, organized a local board, to assist the agents of the Daniel Hays Land Company in the sale of certain lands in Madeira County, California. The local board had an arrangement with the land company by which compensation was to be paid for the services rendered. On December 6, 1917, Lacey received a certificate entitling him to participate in a special guaranty fund of the Daniel Hays Company, and to 5 per cent of the entire gross cash receipts from its sale of land in the Columbus district. As a part of the obligation assumed by the land company in this certificate, it agreed to begin an active campaign for the sale of land in the Columbus district, to conduct an advertising campaign, and to provide agents for

that purpose. All of the transactions with the land company in which the appellant bank was interested were conducted by Lacey. The contract to perform services for the land company was personal, so far as Lacey was concerned, and, so far as the evidence shows, the bank profited thereby only to the extent of the discounts allowed upon notes purchased by it. The Daniel Hays Land Company later became bankrupt, and Lacey was subpœnaed as a witness, and testified upon a hearing before Judge Landis in Chicago in the bankruptcy proceedings. His examination related largely to the transactions had by him with the land company and as to his knowledge generally of financial transactions in Columbus Junction and vicinity. E. D. Morrison, a lawyer residing at Washington, Iowa, was present during the examination of Lacey in the bankruptcy proceedings. Morrison was called as a witness by appellee upon the trial of this case, and was permitted, over proper objections by counsel for appellant, to testify in detail as to the statements and admissions of Lacey concerning his transactions with the land company. The admission of this evidence is assigned as error by appellant, and is one of the principal grounds relied upon for reversal. The theory of counsel for appellee upon which it is argued that Morrison's testimony was properly admitted is that Lacey, as a witness, acted as the agent of appellant, as well as for himself, and that his admissions and declarations as such agent, are binding upon his principal; and also that the local board, organized to promote the sale of the California land in the Columbus district, constituted a conspiracy to defraud, and that the evidence was admissible as the declaration of a coconspirator.

Just in what capacity Lacey represented, and was the agent of, appellant, when testifying as a witness in the Federal court at Chicago, is not clear. It is conceded that his testimony was given in response to a subpœna, and it is not claimed that he acted voluntarily or upon special authority conferred by the bank. The law is well settled that the declarations of an agent are not binding upon his principal unless made while such agent is engaged in the business in reference to which the statement is made, and while he is acting within the scope of his authority. *Vohs v. Shorthill Co.,* 124 Iowa 471. We held in the above case

that an agent for the corporation, while testifying as a witness, does not represent the corporation, but is acting in an individual capacity only. This rule was adhered to in *Harrison County v. State Sav. Bank,* 127 Iowa 242, in which the further statement was made:

"It is undoubtedly true that, under some circumstances, the statement or admission of a cashier may be taken as the statement or admission of the bank he represents; but this is so only when the cashier is acting within the scope of his power or duty as the bank's agent or officer. It is therefore incumbent upon the party who offers such testimony to establish its admissibility under the rule just stated. And this is especially true where the statement or admission sought to be proved has reference to a past transaction."

We find nothing in the record to indicate that Lacey testified as an officer or agent of the bank, or that he assumed, or had, authority to so represent it at the time the alleged admissions and declarations were made. Lacey is not a party to this action, and his statements, admissions, and declarations made outside of the scope of his authority as an officer or agent of the bank, and while not engaged in transacting some business on its behalf or otherwise representing it, were clearly inadmissible. It is not enough, to constitute him an agent or to show that he acted in his official capacity as president of the bank, that the corporation might in some way be benefited by his testimony. The objection to the testimony of the witness should have been sustained.

We shall not undertake to determine whether the conspiracy alleged to have been entered into by and between Lacey and others to aid and assist the agents of the Daniel Hays Company to defraud purchasers of worthless land in the Chowchilla or other districts in California was established, either by direct or circumstantial evidence. We have, however, examined the record with care, and find no evidence tending to show that the corporation represented by Lacey was engaged in such conspiracy. The bank is a separate entity; and whether Lacey, as an officer thereof, could bind the bank by anything he did, or could have done, in furthering the interests of the alleged conspiracy, is not material, as there is nothing in the record to

indicate that he attempted to do so.  The rule under which the declarations of a coconspirator are sometimes admissible is not applicable to the facts of this case.  It is our conclusion that the evidence of the witness Morrison was not admissible, upon either theory of counsel.

II.   While at this point, we may as well dispose of the further contention of appellant that the court committed error in submitting the issue of conspiracy to the jury.  ·As we interpret the court's instructions, it was not intended to submit this issue to the jury as a separate defense, but only because of its bearing upon the question of notice to the bank.  Competent evidence which tended to prove knowledge on the part of Lacey of the alleged fraud practiced upon appellee at the time the note was purchased by the bank, was proper; but whether the bank would be charged with notice of the knowledge· possessed by Lacey under the circumstances stated in the instruction, we need not now discuss; nor do we find it necessary, in deciding this appeal, to express an opinion on this point.  Certainly, any knowledge possessed by Lacey of the fraudulent character of the transaction out of which the note grew, legitimately coming to him, would bind the bank.

2. BILLS AND NOTES: holdership in due course: knowledge of agent of purchaser.

The only direct reference in the instructions to the subject of conspiracy is in the statement of the issues.  The court does, in several paragraphs of the charge, refer to the issues, but does not mention conspiracy.  The exceptions to the instructions on this point proceed on the theory that the issue was submitted as a separate defense to the cause of action, and that it was not sustained by the proof.

III.   The court instructed the jury that, if any officer of the bank knew, at the time the note was purchased, of the provision of the contract executed contemporaneously therewith,— that, if the land, upon inspection, did not prove satisfactory to appellee, the notes would be returned to him,—the bank was not a bona-fide holder for value.  The interpretation placed upon the contract by this instruction is criticized by appellant.  The contract did not, in express terms, provide for the return of the notes in the event the land was rejected; but such was the

3. BILLS AND NOTES: holdership in due course: fraudulent negotiation.

purport and effect thereof. The contract and the note constituted one transaction, and they must be construed together.

The whole transaction was prospective, and contemplated the inspection of the land by appellee within 90 days, and the rejection by him of the purchase of the land if it proved unsatisfactory to him. The duty of the land company, in that event, to return the notes, if unpaid, was clearly implied. If Lacey, or any other officer of the bank, had notice of the terms and provisions of the contract, appellant was charged therewith, and it was not a bona-fide purchaser of the note for value. *Home St. Bank v. Martin,* 196 Iowa 1092.

IV. The court overruled the motion of appellant to permit its counsel to open and close the argument to the jury, and of this ruling it complains. Section 3701 of the Code, 1897, provides:

4. TRIAL: argument: right to open and close argument.
"* * * In the argument, the party then having the burden of the issue shall have the opening and closing * * *."

Appellee admitted the execution of the note, and set up fraud in its inception, conditional delivery, and other affirmative defenses, in his answer. Appellant offered the note, together with the notice and certificate of protest, in the evidence, and rested. Appellee then introduced his evidence in support of the issues tendered by him. The burden of sustaining the affirmative defenses pleaded, by a preponderance of the evidence, rested upon appellee. If no evidence was offered by plaintiff to overcome the prima-facie showing of fraud, the defendant would have been entitled to a verdict. It was not, however, incumbent upon appellant to meet and overcome the issue of fraud, although, of course, it had a right, if it could, to do so. It was sufficient to avoid it if the proof offered sustained the bank's claim that it purchased the note before maturity, for a valuable consideration, and without notice of infirmities or of defect in the title of the holder. The ultimate issue to be determined was the *bona fides* of appellant's title to the note. Evidence was also introduced to negative the claim of fraud. The burden of the issue at the close of all the evidence rested upon appellant: that is, it was incumbent upon it to show the *bona fides* of the transaction by which it acquired title to the note. We have held that,

as a rule, much discretion must be allowed the trial court in determining on whom the burden rests; and, unless such discretion is abused, and prejudice appears, a reversal will not follow. Appellant was entitled to open and close the argument to the jury. *O'Conner v. Kleiman*, 143 Iowa 435. We would not, however, reverse this case upon that ground alone.

V. The cause of action is charged in two counts,—one against the appellee as maker, and the other as indorser. The court withdrew the second count of the petition, and submitted the case against appellee as maker only. The

<div style="margin-left:2em; font-size:smaller;">5. BILLS AND NOTES: indorsement when payable to "myself:" effect.</div>

note was made payable "to the order of myself," and was signed by appellee as maker, and indorsed on the back, "Levi P. Burr." The note was presented to appellee, and protested for nonpayment. Was appellee liable both as maker and indorser, and did the court err in withdrawing the second count of the petition from the jury? The indorsement of appellee was necessary, to give negotiability to the note. Without such indorsement, and until delivery, it was a mere nullity. Appellee could not contract with himself, and thereby become both debtor and creditor in the same transaction. Upon indorsement and delivery, the note became negotiable, and appellee became bound as maker. His indorsement added nothing to his liability, and did not change his obligation from that of a maker to the conditional one of an indorser. The question is not merely: Did he, by signing his name on the back of the note, become an indorser, within the meaning of the Negotiable Instruments Law, but, if so, was his liability in any way changed thereby? We have found little authority on the subject. The indorsement on the back of the note was necessary, to give it validity; but, by thus signing it and passing it to the agent of the land company, he did not become an indorser, in the commercial acceptance of the term. *Ewan v. Brooks-Waterfield Co.*, 55 Ohio 596 (45 N. E. 1094); *Sabine v. Paine*, 166 App. Div. 9 (151 N. Y. Supp. 735). The holding of the Ohio court accords with our view. We have found no case holding to the contrary. The court did not commit error in withdrawing the second count of the petition from the jury.

The remaining assignments relate to the admissibility of

certain testimony, and to alleged errors in the court's charge to the jury. As the judgment below must, on account of the errors already pointed out, be reversed, we do not deem it necessary to discuss these assignments. None of them may arise upon a retrial of the case. For the reasons pointed out, the judgment of the court below must be, and is,—*Reversed.*

ARTHUR, C. J., DE GRAFF and VERMILION, JJ., concur.