## SECURITIES & EXCHANGE COMMISSION v. HARRISON et al.

Civ. No. 2617-48.

United States District Court
District of Columbia.

Oct. 18, 1948.

Louis Loss, Associate Gen. Counsel, Edward H. Cashion, Chief Counsel, Division of Corporation Finance, and E. Russell Kelly, all of Washington, D. C., and C. J. Odenweller, Jr., of Cleveland, Ohio, for plaintiff.

Arnold, Fortas & Porter, Thurman Arnold, Abe Fortas and Milton V. Freeman, all of Washington, D. C., and Joseph L. Weiner, and Lawrence R. Eno, both of New York City, for defendants and intervenors.

MORRIS, District Judge.

This is a proceeding in which the Securities and Exchange Commission has applied to this Court, pursuant to Section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78u(c), for an order requiring the defendants to appear before a duly designated officer of the Commission and give testimony concerning the matters referred to in subpoenas duces tecum and ad testificandum issued by such an officer. It is alleged that the subpoenas were issued in a proceeding conducted by the Commission to investigate certain matters relating to an offering of the common stock of the Kaiser-Frazer Corporation. The defendants refused to give certain testimony upon the ground that the same was within the attorney-client privilege, and even failed to disclose the name of the client on whose behalf they claimed such privilege. Proceedings were then had in the United States District Court for the Eastern District of Michigan, Southern Division, to require the disclosure of the name of the client, or clients, for whom they were acting. This they were required to do, disclosing the name of their client as Cyrus S. Eaton, who, with his family, is the majority stockholder of Otis & Company, which was one of three underwriters of the Kaiser-Frazer Corporation's stock offering being investigated. Pursuant to an adjournment, the defendants appeared at a subsequent time and place designated and gave certain additional testimony under oath, but again declined to answer certain questions on the claim of attorney-client privilege. One of the issues which has been raised in the pending investigation by the Commission is whether the defendants' client, Cyrus S. Eaton, caused the filing of an alleged collusive lawsuit by one James F. Masterson on February 9, 1948, in the Circuit Court of Wayne County, Michigan, against Kaiser-Frazer Corporation, its officers and directors, Graham-Paige Motor Company, a large stockholder of Kaiser-Frazer Corporation, and the underwriting firms of Otis & Company, First California Corporation, and Allen & Company. This lawsuit sought an accounting and a permanent injunction against the pending distribution of Kaiser-Frazer Corporation's common stock, which is the subject of the Commission's investigation. It was a condition precedent of an underwriting contract, entered into between Kaiser-Frazer Corporation and the three underwriters on February 3, 1948, that no material legal proceedings be pending against Kaiser-Frazer Corporation as of February 9, 1948, the settlement date. Pursuant to this provision of the contract (and upon other grounds), Otis & Company refused to perform. The questions which the defendants declined to answer related, among other things, to communications between Eaton and the defendants and work performed by them on his behalf in alleged connection with the said Masterson suit. It is the position of the Commission that, if Eaton induced and inspired the filing of the Masterson suit for the purpose of affording a basis upon which Otis & Company could refuse to perform the underwriting contract with Kaiser-Frazer Corporation, such action is fraudulent, and, upon a prima facie showing that such fraud had been perpetrated, the defendants could not decline upon the ground of attorney-client privilege to give the testimony sought. The Commission filed an affidavit by one Anthon H. Lund, Assistant Director of the Division of Trading and Exchanges of the Securities and Exchange Commission, which purports to summarize such parts of the record of the proceedings and evidence had in the investigation proceedings upon which the

Commission relies to show that there is evidence, other than the testimony sought from the defendants, sufficient to constitute a prima facie showing that the alleged fraud had been perpetrated by Eaton, acting through the defendants and others.

Upon motion Cyrus S. Eaton and Otis & Company were permitted to intervene in these proceedings. The defendants and intervenors, in answer to the complaint, deny the jurisdiction of the Commission to conduct the proceedings in which the subpoenas were issued. They assert that the complaint fails to charge any fraud which would, if shown by prima facie evidence, destroy the attorney-client privilege, and thereupon ask the dismissal of the complaint. They further deny the acts charged in the complaint, which are asserted by the Commission to be fraudulent. They deny that any evidence in the proceedings constitutes a prima facie showing that the alleged fraud was perpetrated. They, therefore, assert that the attorney-client privilege has not been destroyed, and the defendants should not be required to testify concerning privileged communications. The defendants and intervenors insist that the Lund affidavit may not be used in lieu of the record, and, furthermore, that the evidence contained in the record should not be received and relied upon, because of the nature and conduct of the proceedings, and the failure to permit cross-examination of the witnesses. They ask relief in these regards by appropriate motions. By counterclaim the defendants and intervenors complain that the investigation proceedings were not instituted and conducted for the bona fide purpose of enforcement of the Securities Exchange Act, as amended, but for the purpose of giving publicity to the charges of the Kaiser-Frazer Corporation against the intervenor Otis & Company, and to procure information helpful to the said Kaiser-Frazer Corporation in a proceeding now pending in the United States District Court for the Southern District of New York, wherein the Kaiser-Frazer Corporation is plaintiff, seeking damages against said intervenor and others. Whereupon, by said counterclaim, the defendants and intervenors seek injunctive relief against the Commission to prevent further public investigation of the matters set forth in the complaint, futher public statements prejudicial to the reputation of the defendants and intervenors, or any statements purporting to make findings or conclusions on the basis of said investigation, or any further investigation limited to matters in aid of the said Kaiser-Frazer Corporation's suit.

A hearing was had on July 19, 20 and 21, 1948 at which time, following argument, the record, consisting of approximately 6,000 pages, and the exhibits were filed by the Commission, subject to a motion of defendants and intervenors to strike on the grounds heretofore mentioned. Leave was granted to the parties to file briefs and appendices, pursuant to which the Commission filed its supplemental brief on August 3rd, and defendants and intervenors filed supplemental brief on August 31st.

I have no difficulty with the question as to whether or not the Commission has jurisdiction to conduct the investigation in which the subpoenas here sought to be enforced were issued. Underwriting transactions are so intimately related to the sale and purchase of securities, and have such direct effect upon the recognized responsibilities of the Commission, that it cannot be said Congress did not contemplate that the Commission should have power to investigate alleged fraudulent practices relating thereto.

It is a well recognized principle of administrative law that investigations ought to be so conducted that harmful publicity will not be used in lieu of sanctions provided by law, but it must rest in the sound discretion of the agency created by the Congress, and not with the courts, to determine when investigations are to be conducted by open or closed hearings. The limitation placed by the Court, in the case of Bank of America National Trust and Savings Association v. Douglas, et al., 70 U.S.App.D.C. 221, 105 F.2d 100, 123 A.L.R. 1266, was upon the public disclosure of confidential reports of bank examiners made to the Comptroller of the Currency with reference to the bank there involved. The use "in confidence" of such reports was specifically authorized by Congress, and the only statu-

tory reference to publicity is in the Comptroller's qualified authority to publish the report on any bank which fails to comply with his recommendations. In the instant proceedings there is no comparable situation. If an analogy be sought between the reports involved in the Bank of America case and the communications here claimed to be privileged, it is apparent that they do not stand on the same footing. The bank reports could be used by the Commission in confidence, but not in public; the communications here involved, if privileged, may not be used, even ascertained, by the Commission either in confidence or publicly. If they be not privileged, there is no limitation on their use or ascertainment.

■ I cannot agree with the contention of the defendants and intervenors that the complaint failed to charge fraudulent conduct. If the Masterson suit was in fact induced and inspired by the client of the defendants to afford the basis of relieving Otis & Company from the obligations of the underwriting agreement with Kaiser-Frazer Corporation, any communications to further such action were, in my opinion, beyond the immunity of the attorney-client privilege. That privilege has long been recognized as a very proper and necessary one to insure full and complete revelation by a person to an attorney to the end that the client may be properly advised, represented, and, in appropriate cases, defended by that attorney. To subject such revelations to exposure by the testimonial process would inevitably lead to concealments which would impair proper representation and thus interfere with proper administration of justice. While it relates to the rights of an individual, it is nonetheless recognized, as so many of our fundamental rights are, as essentially in the public interest. This privilege has, however, never been intended to be, and should not be, a cloak or shield for the perpetration of a crime or fraudulent wrong doing. One who consults an attorney to secure aid or assistance in the perpetration of a future crime or fraudulent wrong doing is not consulting that attorney for the legitimate purposes which are protected by the privilege. If, therefore, it be shown by evidence other than the disclosure of the communications between client and attorney that aid or assistance is being sought for the perpetration of crime or fraudulent wrong doing, there is no immunity to the testimonial process respecting such communications. It has long been recognized, in both the English and American courts, that the party attacking the privilege on the ground that communications were to further a fraudulent purpose must produce sufficient evidence to sustain a finding that the communications were for such wrongful purpose before evidence as to the communications will be required.[1] Various expressions of this rule have been cited in brief and argument in these proceedings, but, upon analysis and a full reading of their context, they come in effect to this statement of the rule.

■ The defendants and intervenors insist that there is a further limitation upon the disclosure of communications made by the client to an attorney, even though in furtherance of a crime or fraudulent wrong doing, and that is that only when such fraud is an issue in actual litigation may a disclosure of the communications relating thereto be required. This is grounded upon the decision in Alexander v. United States, 138 U.S. 353, 11 S.Ct. 350, 352, 34 L.Ed. 954. In that case Alexander was convicted of murder. The trial court had admitted evidence by an attorney to the effect that, during the interval between the murder and the finding of the body, Alexander had consulted him, saying that his partner was missing and had taken away some money, and inquiring whether he could hold certain horses of the partnership to secure the money. The Supreme Court reversed, distinguishing Regina v. Cox, 14 Q.B.D. 153, saying, "This case, however, is clearly distinguishable from the one under consideration, in the fact that the solicitor (in the Cox case) was consulted with regard to a scheme to defraud, for which his clients were *subsequently* indicted and tried, and the testimony was offered upon that trial; while in this case the consultation was had *after the crime was committed,* and was offered in evidence as an admission tending to show

---

[1] Rule 212 of the American Law Institute's Model Code of Evidence.

that defendant was concerned in the crime, or rather as a statement contradictory to one he had made upon the stand. Had he been indicted and tried for a fraudulent disposition of his partner's property, the case of Reg. [Queen] v. Cox would have been an authority in favor of admitting this testimony, but we think the rule announced in that case should be limited to cases where the party is tried for the crime in furtherance of which the communication was made." (Emphasis supplied.)

Considered in the factual situation of the Alexander case, it would seem that the distinction made with the Cox case was rather as to the time of the communications with reference to the offenses involved than a holding that, with a proper showing being made, disclosure of communications could not be required in an investigatory proceedings, as contended by the defendants and intervenors. While it is true, as defendants and intervenors state, that ordinarily an investigatory body finishes its task when a prima facie case of fraud is shown and there is, therefore, no necessity for going further and requiring the disclosure of a communication otherwise privileged in order to establish the fact of fraud, I can see no legitimate reason why, if the requisite showing has been made which justifies the piercing of the privilege, evidence in that situation, which is certainly competent, cannot be required and given in an investigatory proceedings, and I do not believe the decision in the Alexander case was intended to hold otherwise.

The question is, therefore, squarely met as to whether or not there is evidence which takes the communications out of the rule of attorney-client privilege. This evidence consists in part of testimony as to certain statements by the intervenor, Cyrus S. Eaton, and in part of documentary evidence as to numerous telephone conversations during the critical period after the attempted stabilization of the stock on the market, and immediately prior to the settlement date under the terms of the underwriting contract. The statements of Eaton as to which testimony was given are to the effect that he would not go through with the agreement; that he threatened that there would be administrative investigations, the stock would fall to $5 and "hell will be popping" if Kaiser-Frazer insisted on holding Otis & Company to the contract. Testimony was also given that Eaton stated in substance, "I am going through the purchase agreement and the registration statement with a fine tooth comb and try and find something to hang my hat on;" "I will find something that I won't be bound by, because I don't propose to go through with it;" and "I would rather have a lawsuit on my hands than be broke." There is also testimony to the effect that he asked his attorney to find a way out and what the measure of damages would be in the event of a cancellation without cause. The documentary record of long-distance telephone calls shows calls between February 5th and February 9th between the intervenor Eaton and certain parties, and among such calls are at least two from Robert Bulkley and James Masterson and several calls from M. C. Harrison (one of the defendants) to David Martin, who is the attorney who filed the Masterson suit. There is no evidence as to the telephone conversations themselves which show that Eaton, or any one acting for him, induced or sought to induce the filing of the Masterson suit. There is testimony that inquiry was made by Harrison of A. L. Pomerantz in a telephone conversation concerning other matters as to whether or not Pomerantz was interested in the filing of a suit against Kaiser-Frazer. Pomerantz testified that his firm had been looking into Kaiser-Frazer for some time, that they had in fact drafted a complaint, but that he did not know positively whether they had actually served a summons and complaint. Pomerantz stated that he understood the inquiry to be whether or not an action had been filed, or would be filed, and that positively Harrison did not state that he wanted Pomerantz to file such an action. He further testified that he called Harrison back the next day and stated that the action had not been filed. There is also evidence that defendant Harrison sent his younger partner, the defendant Hull, to Detroit from Cleveland to ascertain whether or not a suit against Kaiser-Frazer Corporation was filed on the morning of February 9th, which was the day it was filed, and which was also the closing date of the agree-

ment. There is some testimony as to the choice by Masterson of Martin as the attorney to file his suit, and the Commission insits that the explanation of such choice is not considered credible.

■ Certain of the circumstantial facts here depended upon testimony, while others rest upon documentary evidence. It is insited by the defendants and intervenors that, inasmuch as the witnesses were not subject to cross-examination in the investigatory proceedings, their testimony should not be considered in determining whether or not a prima facie case of fraud has been made. With this I cannot agree, but, in determining whether or not testimony given under such circumstances in itself, or in conjunction with documentary evidence, constitutes a prima facie case, unquestionably it must be viewed in the light that the witnesses were not subjected to cross-examination. No one trained and experienced in considering the testimony of witnesses and making decisions based thereon can fail to realize that a witness' testimony cannot be considered to have the same reliability when his statements have not been subjected to full and fair cross-examination. This, in no sense, is concerned only with the veracity of the witness but as well with his choice of language, honest recollection and explanation. Of necessity, in investigatory proceedings frequently, and in grand jury proceedings uniformly, the examination of witnesses does not include cross-examination. Such testimony for that reason is not to be disregarded, as defendants and intervenors contend, but it must be subjected to the strictest scrutiny for possible ambiguity and equivocation.

■ It is insisted that inferences should be drawn from the evidence that Eaton, through the defendants and others, inspired and induced the filing of the Masterson suit. It is urged that, in considering whether or not the evidence is sufficient to pierce the attorney-client privilege, every inference favorable to the contention of the Commission should be made. In considering whether a prima facie case has been made, reasonable inference from circumstances proved should be made to support the ultimate facts constituting the

prima facie case, but, of course, this does not mean that an inference of guilt or wrong doing can be made where that ultimate fact may not be reasonably drawn from the circumstantial facts established. It is quite apparent that the circumstantial facts proved are reasonably consisent with inquiries as to whether or not a derivative suit had been, or would be, filed, as with actually seeking to induce or cause the filing of such a suit. In this situation, I cannot believe that Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, compels the conclusion that a prima facie case of guilt or wrong doing has here been established. In any event, I do not consider the circumstances here proved to be such, without more, as to reasonably justify a verdict of wrong doing which could be sustained, and I, therefore, must conclude that the requisite prima facie showing of fraud to pierce the attorney-client privilege and relieve the communications here sought to be disclosed from immunity has not been made.

The Court, in these proceedings, is not required, nor would it be proper, to make findings as to whether or not the fraud charged was perpetrated, but only to determine whether or not the evidence in the record, without more, constitutes a prima facie showing of such fraud. It should also be clearly understood that the Court is not passing on the claim of immunity respecting testimony other than communications between the intervenor and his attorneys. There is a note in the brief of the Commission to the effect that certain acts of the attorneys, about which the defendants were questioned, do not come within this scope, but no argument, oral or written, was made on this point, nor is any action by this Court sought on this ground.

■ With respect to the counterclaim, I am of the view that such relief as the defendants and intervenors claim therein, and which can be properly granted, will be afforded by the refusal of this Court to enforce obedience to the subpoenas in so far as they seek to require testimony concerning communications falling within the attorney-client privilege. I am of the further view that, in so far as the counterclaim

seeks injunctive relief respecting the future conduct of the hearings in the investigatory proceedings, the defendants and intervenors are not entitled to the relief sought, and that this Court does not have the power by injunctive relief to control the conduct of such hearings by the Commission.

Other matters urged by the parties in this case, in addition to those mentioned in this memorandum, have been fully considered, but do not, in my opinion, alter the conclusions reached.

In the view stated, the motion to dismiss the complaint and the motion to strike the record filed in lieu of the Lund affidavit will be denied. The order sought by the Commission to enforce the subpoenas directed to the defendants in so far as they call for testimony and evidence relating to communications with their client, Cyrus S. Eaton, or require a disclosure of such communications, will be denied. The motion to dismiss the counterclaim and interrogatories with reference thereto will be granted. Counsel will prepare orders to carry this decision into effect.