SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

GLASS MARINE INDUSTRIES, INC., a Delaware corporation, Defendant.

Civ. A. No. 2276.

United States District Court
D. Delaware.

June 6, 1961.

John J. Enright, and John W. Vogel, Chicago, Ill., for Securities and Exchange Commission.

H. James Conaway, Jr. (Morford, Young & Conaway), Wilmington, Del., and Lawrence A. Coles, Jr. (Thompson, Raymond, Mayer, Jenner & Bloomstein), Chicago, Ill., for defendant.

Hayden Leason, Intervenor, pro se.

Arthur J. Sullivan (Morris, James, Hitchens & Williams), Wilmington, Del., and Saul S. Nevins, New York City, for Special Intervenor, Lancer Industries, Inc.

LEAHY, Senior District Judge.

The Securities and Exchange Commission sues Glass Marine Industries, Inc., a Delaware corporation for violating the Securities Acts of 1933 and 1934.[1] At trial plaintiff made a blanket offer of 260 documentary exhibits and 27 depositions containing 4700 pages of testimony. The offer did not disclose the specific purpose for which the writings were offered. Further, plaintiff did not articulate against which party defend-

1. Sections 17(a) (1), 17(a) (3) and 24 of the Securities Act of 1933, as amended 15 U.S.C.A. §§ 77q(a) (1), 77q(a) (3) and 77x and Section 10(b) of the Securities Exchange Act of 1934, as amended 15 U.S.C.A. § 78j(b) and Rule 10b–5, 17 CFR 240.10b–5.

ant (corporate defendant or individual intervenor), or both, or on what grounds the evidence was to be introduced. Absent such specificity, the offer has not, as yet, been admitted.[2] In addition to lodging its general objection to the sweeping and pervasive nature of plaintiff's offer, the corporate defendant[3] has specifically objected to the admission of seven particular documents. Again, the purpose for which these documents are offered has not been stated. Defendant's objection assumes, however, they are proffered as admissions against the corporate defendant. Considering plaintiff's counsel's statements at trial[4] this assumption appears to be correct. The documents offered are notes taken at a Glass Marine directors meeting by Keennan Hanley (a director); an affidavit signed by him but written by an agent of the SEC; and five transcripts of investigatory statements taken at a private examination during the course of an investigation of defendant Glass Marine Industries, Inc., and conducted by agents of the SEC in October, 1960. Defendant objects to the introduction of the Hanley notes and affidavit, as admissions of the corporation, because these documents were not subject to the usual tests of credibility and, at best, are self-serving statements of a person having interests which may be adverse to those of the

corporation. Defendant's objections to the admission of the investigatory transcripts is grounded upon two theories: 1. The witnesses, when giving their statements before the investigatory agents of the SEC were not acting within the scope of any corporate authority; their interests could have been adverse to those of the corporation; therefore, their statements could not bind the corporate defendant; 2. the corporate defendant did not have opportunity to test the credibility of the statements of these persons by cross examinations; therefore, admission of these transcripts, as evidence, against defendant corporation would constitute an erosion of the protective barrier traditionally afforded defendants by orthodox rules of evidence. The witnesses, whose transcripts are now offered, are:

A. Geary Leason, director and secretary of Glass Marine at the time of the investigation.

B. Nicholas J. Savaiano, director, president, treasurer, and general manager of Glass Marine at the time.

C. Richard E. Moore, director of the corporation at the time. He was uncertain whether he was also a vice president of Glass Marine at that time.[5]

2. The refusal to admit plaintiff's proof at this stage of the trial is due to the court's aversion to the "dump truck" method of trial practice adopted by counsel. As Judge Wyzanski observed when faced with a similar situation in United States v. United Shoe Machinery Corp., D.C.Mass., 93 F.Supp. 190, 191:

"It is the function of counsel to aid the Court by selecting from the mass of evidence made available through the almost unlimited pre-trial discovery sanctioned in this case such portions as the Court can study within a reasonable time. Counsel cannot dump into the lap of the Court an undigested mass of documents comprising hundreds of thousands of pages and then expect the Court to read all of them, even if they were all to some degree both relevant and persuasive. The Court has obligations to

other parties who have cases to be heard."

3. It should be noted that defendant-intervenor Hayden Leason was allowed to intervene (Order dated December 29, 1960), but he failed to appear at trial either pro se or by counsel. No objection, therefore, was made on his behalf at trial.

4. TR. p. 148.

5. Subsequent to the taking of Moore's investigatory testimony, a consent decree was entered by the Delaware Chancellor in the case of Keenan Hanley, Nicholas Savaiano, Richard E. Moore, Edward R. Brooks, and Glass Marine Industries, Inc. v. Hayden Leason, Bala Williams, Jr., William B. Robinson, Geary Leason Alfred Dallago, Benjamin Tessler, Albert N. Lewis, Saul Nevins and Lancer Industries, Inc., (CA No. 1362 Delaware

D. Hayden Leason, intervenor in this action, director and vice president [6] of the defendant corporation at the time of the investigation.

E. Saul Nevins, counsel for Lancer Industries, Inc., and, as such, intimately concerned with the Lancer chapter of the Glass Marine story. He has held no official position with defendant Glass Marine.

These witnesses, with the exception of Moore, were not present at trial. As stated, they did appear and gave statements under oath to the SEC during its investigation. The investigation was ex parte and held *in camera*. The witnesses appeared either upon subpoena or threat of subpoena. All were accompanied by counsel, except Nevins who as an attorney served as his own counsel. The corporate defendant, here, was not represented by counsel in these investigatory proceedings and was not afforded the opportunity to cross-examine any of the individual witnesses.[7]

1. Defendant's blanket objection to the evidence as offered suffers from the same disabilities attaching to plaintiff's

offer of proof. The bald fact is the court is asked to rule on this evidence *in vacuuo*.[8], [8a] Plaintiff has not indicated what portions of the contested documents are to be introduced for what purpose. Until this requisite specificity is supplied, it is difficult to determine what it is the defendant objects to.

■ 2. In addition, defendant asserts these documents do not, in whole or in part, meet the standards applicable to admissions of a corporate party and should be excludable as hearsay. Before considering the merits of defendant's position a word, in passing, should be said about the status of "party admissions" in the field of evidence. Extrajudicial admissions of a party are generally receivable against the party, while present, to prove the truth of the matter asserted therein. As such, an admission differs from a dying declaration, declaration against interest or a statement used for impeachment. It is the considered opinion of authorities on evidence that an admission is not to be classed as an exception to the hearsay rule. For example, Judge Wyzanski in

---

Court of Chancery) which provided in part that:

"(2) * * * and discharge of Richard E. Moore as Vice President of Glass Marine Industries, Inc., at a purported meeting of September 25, 1960 shall be of no effect."

6. Under the Chancellor's order referred to in footnote 5, Hayden Leason's election to the office of vice president was apparently held to be void.

7. Cross-examination of some of these witnesses by the defendant corporation did take place at later deposition hearings taken pursuant to FR 26 of the Federal Rules of Civil Procedure in preparation for the present trial.

8. This difficulty infected the offer of Moore's transcript at trial. At trial defendant's counsel stated:

"Your Honor held that the transcript or Moore's utterances as evidenced by the transcript were not admissible as affirmative proof. They were admissible only for the purpose of impeachment if an adequate foundation were laid; or the SEC could use the transcript for the purpose of refreshing Mr. Moore's recollection." [Tr. 154].

This was in error. The Court said:

"Now, that takes care of the use of the investigatory transcript in its totality. I will sustain the objection to introducing it into evidence as such, but its utilization by you as an advocate I will have to pass on when I see what means you take to utilize it to refresh the witness' recollection.

"We come to the second question as to whether or not that part of the testimony which might fall into another exception to the hearsay rule is admissions and we will have to rule on that each time you attempt to bring forth from the witness an admission." [TR. 121].

8a. Where the live witness is present the better practice is always to present him with the specific portions of the document or prior testimony which might constitute an admission. This gives him the opportunity to explain the statement. This opportunity is usually available to a party (is one reason) when an admission is placed into evidence.

At trial, counsel for SEC did not choose to utilize the document in the manner suggested by the court.

United States v. United Shoe Machinery Corporation, D.C.Mass., 89 F.Supp. 349, 351, correctly observed:

"It has sometimes been erroneously said that extrajudicial admissions are receivable against a party as an exception to the hearsay rule and that the reason for the exception is either because in that party's eyes the statement must at one time have seemed trustworthy or because it is only fair to put upon that party the burden of explaining his own declaration. But the masters of the law of evidence now agree that this is not the correct rationale. Morgan, The Rationale of Vicarious Admissions, 42 Harv.L.Rev. 461; Wigmore, Evidence, 3d Ed. § 1048. See Napier v. Bossard, 2 Cir., 102 F.2d 467, 468; Milton v. United States, 71 App.D.C. 394, 110 F.2d 556, 560. Unlike statements of fact against interest (sometimes loosely called admissions), an extrajudicial admission of a party is receivable against him not as an exception to the hearsay rule but as not being within the purpose of the hearsay rule. The hearsay rule is a feature of the adversary system of the common law. It allows a party to object to the introduction of a statement not made under oath and not subject to cross-examination. Its purpose is to afford a party the privilege if he desires it of requiring the declarant to be sworn and subjected to questions. That purpose does not apply, and so the hearsay rule does not apply, where the evidence offered against a party are his statements.

"The question remains as to what are 'his' statements. The answer is to be found not in the law of evidence, but in the substantive law, particularly of agency and of corporations. Wigmore, Evidence, 3d Ed., § 1078, note 1; Morgan, supra, p. 463."

 In this case, to allow the ex parte writings or investigatory transcripts in part or in whole as admissions of the corporate defendant, it must be established that the particular declarant, in making the proffered statement, was acting as a corporate alter ego; i. e., his relationship was such as to "bind" the corporation. This plaintiff has not done. By the same token, I cannot, at this time, sustain defendant's objection without first exploring the contents and grounds of admissibility for the particular documentary offers.

 As to the admissibility of the investigatory transcripts, defendant argues that the rule stated in Vohs v. A. E. Shorthill Co., 124 Iowa 471, 100 N.W. 495, 497, is applicable here and should control. There, testimony of corporate agents taken on the witness stand was offered as admissions of the corporation. The court said:

"* * * This testimony was not introduced for the purpose of impeachment, but as containing declarations of Spiers and Johnson as agents of the corporation. But we think it is clear that the corporation is not bound by declarations made by its officers or agents while on the witness stand. While testifying they are not acting for the corporation, but are speaking for themselves individually. It is well settled that the declarations of an agent are binding upon his principal only when made while the agent is engaged in the business in reference to which the statement is made, and while acting within the scope of his authority. Howe Machine Co. v. Snow, 32 Iowa 433; McPherrin v. Jennings, 66 Iowa 622, 24 N.W. 242. We know of no authority whatever for holding a principal bound by the declarations of his agent, while made on the witness stand."

Other cases (though not cited by the defendant) are in accord with this approach.[9] It is doubtful, however, that

9. Bangs Milling Co. v. Burns et al., 152 Mo. 350, 53 S.W. 923; Louisa Coun- ty Nat. Bank v. Burr, 198 Iowa 4, 199 N.W. 359; Byrne v. Hafner Feed Co.,

this rule applies to testimony given by officers, directors or agents during the course of an agency (i. e., the SEC) investigation of the corporation. Pan-American Petroleum & Transport Co. v. United States, 273 U.S. 456, at page 499, 47 S.Ct. 416, at page 422, 71 L.Ed. 734.[10] The rule that an officer of a corporation, while testifying as a witness, may not per se bind the corporation has the attractive feature of guilotine simplicity and hence is easily applied. All too often, however, such mechanical facility has lured courts into the maze of abstract legal reifications, away from the pursuit of the actual critical facts of the case. The concept "authority to bind" has no meaning unless related to a specific fact situation. Where, as here, the facts are yet uncovered the rule as to admissions of an officer as binding against the corporation is of little assistance to the court. *The degree of corporate awareness of the alleged violations* of the Security Acts to be assigned to defendant Glass Marine through its officers, agents, promoters, etc., can only be determined after a complete disclosure and an examination of all the facts bearing on the corporate activities. Judge Morris' comments in Securities & Exchange Commission v. Harrison, D.C. D.C., 80 F.Supp. 226, 232, namely:

" * * * No one trained and experienced in considering the testimony of witnesses and making decisions based thereon can fail to realize that a witness' testimony cannot be considered to have the same reliability when his statements have not been subjected to full and fair cross-examination. This, in no sense, is concerned only with the veracity of the witness but as well with his choice of language, honest recollection and explanation. Of necessity, in investigatory proceedings, frequently, and in grand jury proceedings uniformly, the examination of witnesses does not include cross-examination. *Such testimony for that reason is not to be disregarded,* as defendants and intervenors contend, *but it must be subjected to the strictist scrutiny* for possible ambiguity and equivocation." (emphasis supplied),

represent a fair statement of the attitude with which courts should approach testimony taken during SEC investigations and with their ex parte writings, especially where the witness or writer may be adverse to interest of the corporate defendant. Such judicial reservation, it is obvious, goes to the credibility to be assigned to the ex parte statements and not their admissibility.

■ 3. Professor Thayer adopted the thesis that the rules of evidence are a "product of the jury system where ordinary untrained citizens are acting as judges of fact." [11] But, the rules should not apply with the same strictness to a non-jury case such as here where the judge has training in evaluating the evidence and especially where his findings of fact must be specifically articulated in order to be reviewable on appeal. In a non-jury case such as the one at bar, I prefer to admit provisionally all evidence offered generally, which is likewise objected to generally, reserving all questions of admissibility until all the evidence is in, at which time the parties must specify what portions of the evidence are considered admissible and the reasons therefor. There is authority to agree with this procedure.[12]

4. Accordingly, defendant's present blanket objections are denied. This means the proposed brief schedule will

143 Mo.App. 85, 122 S.W. 349; Nebraska Bridge Supply & Lumber Co. v. Owen Conway & Sons, 127 Iowa 237, 103 N.W. 122; St. Charles Sav. Bank v. Denker et al., 275 Mo. 607, 205 S.W. 208.

10. Involving a Congressional investigation committee.

11. See McCormick On Evidence, p. 137 (1954) citing Thayer, Preliminary Treatise on Evidence, 509 (1898).

12. Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377, at page 379; McCormick, op. cit., pp. 137-138.

be altered. Instead of both parties filing their main briefs on the same date, plaintiff will first file its brief. If in its main brief it makes reference to or an attempt to utilize any of the investigatory testimony or the ex parte writings in support of its allegations in its complaint, such portions so utilized must be supported by an admissibility argument. Defendant may then, in its main and answering brief, counterargue such material should have no part in a determination of the issues to be decided. Unless this procedure is acceptable to counsel, the trial must be resumed and plaintiff reoffer the greater part of its documentary proof with a specific statement as to purpose and effect of the several hundred writings, what proof each exhibit supports, and the grounds of admissibility.

So ordered.